## North American Coal Corporation *v.* Commonwealth.

Argued April 14, 1971, before President Judge BOWMAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

*Heath L. Allen,* with him *Francis J. O'Gorman, Jr.,* and *Metzger, Hafer, Keefer, Thomas & Wood,* and *David R. Tomb, Jr., Tomb & Tomb,* for appellant.

*Morris J. Solomon,* Assistant Attorney General, with him *William M. Gross,* Assistant Attorney General, and *J. Shane Creamer,* Attorney General, for appellee.

OPINION BY JUDGE KRAMER, July 9, 1971:

This is an appeal from an adjudication (abatement order) issued by the Air Pollution Commission, appellee (Commission), in effect, ordering the North American Coal Corporation, appellant (North American) to install air pollution control equipment designed to control the emission of particulate matter, within the limits of the Commission's regulations. The Commission's adjudication affirmed the abatement order of the Department of Health issued March 6, 1970.

The pertinent portions of the Health Department's abatement order read as follows:

"(1) That the North American Coal Corporation shall, on or before March 1, 1971, install air pollution control equipment or institute a process change on the air tables located in East Wheatfield Township, Indiana County, Pennsylvania, designed to control particulate matter emissions to within the limits specified in Section 1.3 of Air Pollution Commission Regulation IV.

"(2) That the North American Coal Corporation shall, on and after March 1, 1971, reduce the particulate matter emissions from the air tables located in East Wheatfield Township, Indiana County, Pennsylvania, to a level such that these emissions will not exceed the limits set forth in Section 1.3 of Air Pollution Commission Regulation IV.

"(3) That the North American Coal Corporation shall submit to the Department of Health monthly progress reports, the first report being due on April 1, 1970. Each progress report shall give a detailed account of measures taken to comply with paragraphs (1) and (2) of this order and a schedule for future progress."

The only change which the Commission made to the Health Department's order was the extension of time set forth in paragraph 3 of the order noted above, by extending the compliance date to January 1, 1971.

The record discloses that the appellant owns and operates its Seward Coal Mine, adjacent to the Seward Power Station, in Wheatfield Township, Indiana County. The site of the mine entrance is about one-fifth of a mile from the community of Robindale, where three of the four Commission witnesses reside.

This case involves a somewhat different air pollution problem from the usual smoke cases, in that it involves the emission of particulate coal dust matter from two stacks, 77½ feet in height. These stacks are a part of the operation of two air tables used in the processing of coal. An air table is similar to a screen device in which air is blown by fans through openings in the screen, which literally floats and bounces coal across the screen, leaving refuse material to drop through. In this process, a portion of the product entrapped in the air goes through a 14-foot cyclone process which recovers usable coal and gives off some particulate matter in the air. It is the particulate matter remaining after this process which enters the stacks and is emitted into the outside air. Although there is a dispute in the record concerning the efficiency of the cyclone equipment, both parties agree that the cyclone process does not eliminate 100 percent of the particulate matter.

Appellant raises two issues in this case: It argues (1) that the Commission has not met its burden of proving that appellant's emissions through the two stacks are in excess of the allowable limit specified in the regulations of the Commission; and (2) that the adjudication of the Commission was not based upon substantial evidence sufficient to support its findings.

Interestingly enough, the Commission agrees with the appellant, that the Commission, being the party initiating the proceedings, had the burden of proof in this case. The appellant, however, states that because the Commission is charging it with a violation of the Com-

mission's regulations that this case is analogous to a criminal case wherein the Commonwealth must prove every essential element of the crime beyond a reasonable doubt. If this case had been brought before a member of a minor judiciary or a court for the purpose of seeking a criminal penalty under Section 9 (35 P.S. 4009) of the Air Pollution Control Act, Act of January 8, 1960, P. L. 2119 et seq., 35 P.S. 4009, there might then be some merit to appellant's contention. However, in this case, the Commission is attempting to enforce an abatement order, after hearing the matter on its merits, based upon an appeal from an adjudication of the Department of Health under Section 5 of the Act (35 P.S. 4005). We agree with the Commission when it states that the comparative degree of proof by which a case must be established before an administrative tribunal is the same as in a civil judicial proceeding, i.e., a preponderance of the evidence. In this case, proof beyond a reasonable doubt is not required.

The Commission attempted to meet its burden of proving that the appellant's operation violated the minimum standards of the Commission's regulations through the presentation of the testimony of four witnesses. Three were housewives whose homes are in the vicinity of these air tables. These three witnesses testified to the fact of coal dust and dirt being present in and about their homes; although on cross-examination, all of them admitted the presence of coal trains, coal trucks and construction in the same general vicinity. The chief witness for the Commission was an air pollution control engineer employed by the Pennsylvania Department of Health in its Region V. He testified to visiting the site of the air tables on one occasion when the air tables were not in operation. He testified to making *visual observations of emissions* from the two stacks while off the site. He stated that he made his conclusions, i.e., that appellant was in violation of the Com-

mission's regulations, by referring to a standard reference material known as the American Air Filter Bulletin 268-A, and making two assumptions, one concerning the number of grains per cubic foot for air tables with 29,000 cfm, and secondly, an assumption of an efficiency rating of 90 per cent for a 14-foot diameter cyclone. He concluded that the stacks would have an emission of 124 pounds per hour per unit, and he compared this with his computation of the Commission's Regulation IV charts, which, he stated, would allow no more than 17 pounds per hour of suspended particulates, and no more than 12 pounds per hour of particulate fall. It was his opinion that because his estimate of the emission of appellant's stacks was so much higher than his calculation of the allowable emissions that the conducting of tests was unnecessary.

The record is very clear that neither this witness nor anyone else on behalf of the Commission made any tests other than visual ones. The record is likewise very clear that the Department of Health has the equipment to make stack tests, ground tests and ambient air tests, none of which was utilized in this case.

The regulations of the Commission state as follows:

"Section 1.3. Limits for Particulate Matter Emissions

"In the absence of a determination by the Commission imposing more stringent or less stringent limits, as provided for in Section 1.4 of this regulation, a local air pollution problem shall be deemed to exist:

"(1) If any person causes, suffers, allows or permits smoke from any combusion unit, the shade or appearance of which is darker than No. 2 of the Ringelmann Smoke Chart, to be emitted into the outdoor atmosphere.

"Exception: Smoke emitted during the cleaning of a firebox or the building of a new fire may be darker than No. 2 of the Ringelmann Smoke Chart for a pe-

riod or periods aggregating not more than 6 minutes in any 60 consecutive minutes.

"(2) If any person causes, suffers, allows or permits particulate matter (including smoke) to be emitted into the outdoor atmosphere from any air contamination source such that the actual or calculated emission rate of particulate matter from such source (as determined in accordance with Section 1.5) may be expected to cause a ground level concentration at any point outside the person's property in excess of either 150 micrograms of suspended particulate matter per cubic meter of air or 0.6 milligrams of particle fall per square centimeter per month at any time.

Whenever particulate matter from one air contamination source is discharged through two or more flues, the quantity that may be discharged from all of the flues shall not exceed the emission that would be permitted by assuming that all of the particulate matter is being emitted from a single flue having an effective height calculated in the following manner:

"Multiply the effective height of each flue by the percentage of the total air contaminant emission rate emitted through the flue, add the products and divide the sum by 100.

"Whenever particulate matter from more than one air contamination source is discharged through less flues than the number of air contamination sources, the quantity that may be discharged from each flue shall not exceed the emission permitted by this Section 1.3 (2) for each flue except under unusual conditions (see Section 1.4).

"(3) If any person causes, suffers, allows or permits fugitive dust to be emitted into the outdoor atmosphere from any air contamination source or sources in such a manner that the ground level concentration of fugitive dust (as determined in accordance with Section 1.5) from the air contamination source or sources

at any point outside the person's property exceeds a concentration of 2.0 milligrams per cubic meter of air above background concentration, for any 10-minute period.

"Whenever a local air pollution problem is deemed to exist, the Department may, in accordance with the procedures provided in the Air Pollution Control Act, issue an order directing the person or persons charged with causing, suffering, allowing or permitting such air pollution problem to control, abate, or prevent such air pollution problem."

We note that Section 1.5 of Regulation IV states that source testing will be made "when possible and practical". There is nothing in this record which would indicate in any way that the taking of any tests in addition to visual ones was not possible and practical.

Although we agree with the Commission that the burden of proof is not as heavy as is required in a criminal case, we do take note of the fact, however, that the effect of the abatement order of the Commission is no small matter. In view of the fact that we are entering into a new field of law in these air pollution cases, we believe it to be important to establish at an early date that the regulatory agencies of this State must prove their case. We must evaluate the testimony of the Commission witness in the light that he is an employee of the very same adjudicating body passing upon his testimony. It doesn't take unusual wisdom to understand the closeness of the witness to the adjudicating body and the possibilities that present themselves to an employee attempting to impress his employer. Under these circumstances it is not reasonable, nor does it follow the well established principles of fairness, in our system of jurisprudence, to permit such a witness to declare a citizen of this Commonwealth to be in violation of the Commission's regulations based solely upon visual tests, when more reliable scientific tests

are available. We want to make it clear that visual tests do constitute inadmissible evidence as a test, but, nevertheless, when recognized scientific tests are available and practical, courts must insist upon their use and presentation. If there are no scientific tests possible or available, these circumstances must be explained upon the record. In such a case extraordinary care should be taken to make certain that the visual tests are made accurately and fairly and constitute sufficient proof to sustain the opinions of the experts presented.

If scientific tests cannot be made, then, with regard to the use of calculations made from industrial and scientific bulletins and standard works, there must be proof in the record that the data used is reasonably accurate and properly applicable to the equipment or item being analyzed. Nowhere in this record did the Commission tie the bulletin or the assumptions or the computations to the appellant's air tables, cyclones or stacks.

It is very interesting to note that when the appellant presented an independent expert witness with 42 years' experience as an engineer working with air tables in the coal industry, and he attempted to rely upon studies which were made with comparable air tables, the Commission's counsel opposed such analysis as being hearsay. He wanted to cross-examine the persons who made the studies. Counsel for the Commission was supported by the hearing examiner who stated for the record that he is not an attorney, but that he is a member of the Air Pollution Commission. We fail to understand why the examiner permitted the Commission witness to use extrajudicial studies and denied the same permission to the appellant.

Under all of these circumstances and above analysis, we hold that the Commission did not meet its burden of proof in this case.

In connection with appellant's second issue relating to whether or not the adjudication of the Commission was supported by substantial evidence, we refer first to Section 44 of the Administrative Agency Law, Act of June 4, 1945, P. L. 1388, 71 P.S. 1710.44, which states: "The court to which the appeal is taken shall hear the appeal without a jury on the record certified by the agency. After hearing, the court shall affirm the adjudication unless it shall find that the same is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of sections 31 to 35 inclusive of this act have been violated in the proceeding before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by *substantial evidence*. If the adjudication is not affirmed, the court may set aside or modify it, in whole, or in part, or may remand the proceeding to the agency for further disposition in accordance with the order of the court." (Emphasis added.)

This Court, then, is directed to determine whether or not the findings of fact made by the Commission are supported by substantial evidence.

The phrase "substantial evidence" was defined by Justice STERN in the case of *Pennsylvania Labor Relations Board v. Kaufmann Department Stores*, 345 Pa. 398, 400, 29 A. 2d 90, 92 (1942) which subsequently has been frequently quoted with approval. The Court said:

"Upon judicial review, however, it is the duty of the court to determine whether the findings of the board are supported by the substantial and legally credible evidence required by the statute and whether the conclusions deduced therefrom are reasonable and not capricious. All orders and decrees of legal tribunals, including those of administrative boards and commissions, must be supported by evidence sufficient to convince a

reasonable mind to a fair degree of certainty; otherwise our vaunted system of justice would rest upon nothing higher than arbitrary edicts of its administrators.

" 'Substantial evidence' is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Company v. National Labor Relations Board, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 : 'Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the facts to be established.' National Labor Relations Board v. Columbian Enameling and Stamping Company, Inc., 306 U.S. 292, 300, 59 S. Ct. 501, 505, 83 L. Ed. 660 : 'The rule of substantial evidence is one of fundamental importance and is the dividing line between law and arbitrary power.' National Labor Relations Board v. Thompson Products, Inc., 6 Cir. 97 F. 2d 13, 15; National Labor Relations Board v. Union Pacific Stages, Inc., 9 Cir. 99 F. 2d 153, 177. 'Suspicion may have its place, but certainly it cannot be substituted for evidence.' Union Trust Company of Pittsburgh's Petition, 342 Pa. 456, 464, 20 A. 2d 779, 782."

As has already been noted above, in view of the fact that the Commission performed no scientific tests to determine either the kind or quantity of emissions coming from appellant's stacks, and in view of the fact that the Commission's witness relied upon calculations made from a technical bulletin and certain assumptions, none of which was tied to appellant's air tables, this Court cannot rule that there is sufficient substantial evidence upon which to support the Commission's findings and order.

Although the testimony of the three housewives was some evidence that coal dust from appellant's operation was falling beyond its property line, still this, in and of itself, was not sufficient to be characterized as substantial evidence. Regardless of the urgency, or

importance, or the volume of the clamor for environmental purity, this Court cannot ignore well defined and long settled principles of law which protect all of our citizens. If the regulatory agencies are to carry out the full legislative intent of their respective enabling statutes, then they must do so under the well recognized procedural due process guarantees, rights, duties and standards provided by law. If a regulatory agency desires to order the abatement of a violation of its regulations, it must meet its burden to prove that violation with substantial evidence. Nothing less will permit a reviewing court to affirm the action of the agency.

It is not within the purview or the scope of review of an appellate court to change the adjudication of a regulatory agency merely because it would have done it differently or because it disagrees with the philosophical approach of the agency. See *Man O'War v. Racing Commission*, 433 Pa. 432, 250 A. 2d 172 (1969). A reviewing court should only overturn an adjudication of an agency where it has violated a citizen's constitutional rights or has abused its discretion or has committed an error of law. In this case the Commission has not met its burden of proving with substantial evidence that the appellant violated the regulations of the Commission. As noted above, Section 44 of the Administrative Agency Law (35 P.S. 1710.44) gives this Court the power to remand the proceeding to the agency for further disposition in accordance with this opinion. We therefore

### ORDER

AND Now, this 9th day of July, 1971, it is hereby ordered that this matter be remanded to the Air Pollution Control Commission for the purpose of establishing through proper testimony and evidence any alleged violation of the Commission's rules, regulations and standards with substantial evidence in acordance with this opinion.

Judge MANDERINO concurs in the result only.