616 A.2d 39

Grafton DOWNS, Appellant,

v.

COMMONWEALTH of Pennsylvania, Appellee.

VHP, INC. a/k/a Vienna Health Products, Appellant,

v.

COMMONWEALTH of Pennsylvania, Appellee.

Commonwealth Court of Pennsylvania.

Argued May 12, 1992.

Decided Sept. 11, 1992.

W. Thomas McCough, Jr., for appellants.

Andrea F. McKenna, Senior Deputy Atty. Gen., Appeals and Legal Services Section, for appellee.

Before DOYLE and SMITH, JJ., and BARRY, Senior Judge.

DOYLE, Judge.

Grafton Downs and Vienna Health Products, Inc. (VHP) appeal from the judgment of sentence entered in the Court of Common Pleas of Lawrence County for multiple violations of the Solid Waste Management Act (SWMA).[1]

Downs is the president and sole shareholder of VHP, a corporation which manufactures exercise and weightlifting equipment. As part of the production process at VHP, lacquer solvent is utilized to degrease steel parts in preparation for painting. Once the lacquer solvent is used to prepare the steel, it becomes contaminated by grease and oil and the

---

1. Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. §§ 6018.101–6018.1003. We have jurisdiction of the appeal pursuant to Section 762(a)(2) of the Judicial Code, 42 Pa.C.S. § 762(a)(2).

solvent is, thus, rendered useless for further degreasing. This waste solvent was stored on VHP's premises in 55–gallon drums to await ultimate disposal.

On April 12, 1988, two boys discovered four 55–gallon drums of lacquer solvent sitting in a field along Frew Mill Road in Slippery Rock Township, Lawrence County. The Department of Environmental Resources (DER) examined the contents of the four drums and determined that the lacquer solvent contained xylene and toluene, chemicals which are listed as hazardous wastes by the DER.[2] DER traced the drums of solvent to VHP and, thereafter, initiated an investigation of VHP. On April 4, 1989, at the conclusion of the investigation, the Office of Attorney General filed criminal informations in the Court of Common Pleas of Lawrence County against VHP and Downs. The informations charged Downs and VHP with four criminal counts alleging violations of the SWMA as follows: (count I) the improper disposal of hazardous wastes [3] under Section 401 of the SWMA, 35 P.S. § 6018.401 (second-degree felony); (count II) the transportation of hazardous wastes without a permit in violation of Section 401 of the SWMA (second-degree felony); (count III) the use of property of another for disposal of solid waste [4] without a permit in violation of Section 501 of the SWMA, 35 P.S. § 6018.501 (third-degree misdemeanor); and (count IV) the transporta-

2. *See* 40 C.F.R. § 261.31, incorporated by reference in 25 Pa.Code § 261.31, for the list of chemicals determined to be hazardous waste.

3. Hazardous waste is defined by Section 103 of the SWMA as:
 Any garbage, refuse, ... and other discarded material ... which because of its quantity, concentration, or physical, chemical, or infectious characteristics may:
 (1) cause or significantly contribute to an increase in mortality or an increase in morbidity in either an individual or the total population; or
 (2) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, disposed of or otherwise managed.

4. Solid waste is defined in Section 103 of the SWMA as follows:
 Any waste, including but not limited to, municipal, residual or hazardous wastes, including solid, liquid, semisolid or contained gaseous materials. The term does not include coal ash or drill cuttings.

tion of residual waste[5] by an employee of VHP with the permission of Downs to a disposal site that did not have a permit in violation of Sections 301 and 303 of the SWMA, 35 P.S. § 6018.301 and § 6018.303 (third-degree misdemeanor).

On September 18, 1989, a criminal jury trial was commenced against Downs and VHP during which, the following salient testimony was elicited: Larry Hoffman, a former plant manager of VHP, testified that he approached Downs with respect to the quantity of waste solvents which had accumulated on the premises; that Downs instructed him to allow VHP employees to take the waste solvent home because it would cost too much to hire someone to remove the waste; that employees did take solvent home and that he informed Downs when employees did so. Dan Workman, Hoffman's replacement as plant manager, testified that he was also concerned about the accumulation of waste solvents at the plant; he testified that he expressed this concern to another employee, Daniel Pelles, who indicated that he might know a person interested in using the waste solvent to "burn a field." Pelles testified that, at the request of Workman, he took four 55–gallon drums of solvent from VHP and disposed of them in a field along Frew Mill Road. Workman testified that he informed Downs that Pelles took the four drums of solvent from VHP. Pelles testified he and Downs discussed the removal of the solvent, and the only question posed by Downs was "if it [w]ould come back to haunt him."

Despite the fact that Downs was outside of the Commonwealth on vacation when the four drums of waste were transported and dumped, the jury found Downs guilty of improperly disposing of a hazardous waste (count I) and transporting hazardous waste without a permit (count II), both second-degree felonies. The jury found VHP guilty on all four counts. Downs and VHP filed an omnibus motion for new trial and arrest of judgment. On March 20, 1991, the trial judge, Judge Ralph Pratt, in an extensive and thorough opinion, denied entirely the motion of the defendants.

5. A residual waste defined in Section 103 of the SWMA as:

Any garbage, refuse, other discarded material or other waste ... resulting from industrial, mining and agricultural operations. ...

By sentence orders dated July 29 and 30, 1991, the trial court sentenced Downs and VHP. With respect to count I, Downs was sentenced to serve two to four years in prison, to be suspended upon the completion of nine months in the Lawrence County Prison (with work release) followed by probation for two years; fined $10,000; and ordered to perform 750 hours of community service. Further, Downs was fined $2,500 for his conviction on count II. With respect to VHP, the trial court imposed fines for its conviction on counts I, II, and III totaling $70,000; no sentence was imposed for its conviction on count IV, because the trial court held that count IV merged into the other three counts. Both defendants filed a motion to modify the sentences which the trial court denied. This appeal followed.

Downs and VHP contend that (1) the trial court erred in denying their motion for a new trial and arrest of judgment because the evidence is insufficient to sustain the verdict and the verdict is against the weight of the evidence, (2) the trial court erred in admitting the testimony of Larry Hoffman, (3) the trial court violated Article 1, Section 9 of the Pennsylvania Constitution by imposing a prison sentence, (4) the term of imprisonment imposed by the trial court violates the prohibition against cruel and unusual punishment in the Pennsylvania and United States Constitutions, and (5) the trial court abused its discretion in sentencing Downs to a period of incarceration. Issues 1, 3, 4, and 5, as argued by VHP and Downs in their combined brief, apparently apply only to appellant Downs; issue 2 apparently applies to both appellants Downs and VHP.

We will now consider the first contention of Downs.[6]

Downs argues that the trial court erred in not granting the motion in arrest of judgment because there is insufficient

6. Downs's and VHP's motion for a new trial and motion for arrest of judgment are "boilerplate" motions which, without explanation, state that "[t]he evidence was insufficient to support the verdict" and that "[t]he verdict was against the weight of the evidence." The Superior Court held in *Commonwealth v. Holmes*, 315 Pa.Superior Ct. 256, 461 A.2d 1268 (1983), that boilerplate post verdict motions will preserve no issue for appellate review unless the motion goes on to specify in what respect the evidence was insufficient or why the verdict was against the

evidence to support the verdict. Specifically, Downs argues that the Commonwealth failed to present sufficient evidence to find him guilty, either personally or as an accomplice, of violating Section 401 of the SWMA. In reviewing a trial court's denial of a motion in arrest of judgment, if the evidence, viewed in the light most favorable to the Commonwealth, is not sufficient to establish guilt beyond a reasonable doubt, then the trial court should have arrested judgment, *Commonwealth v. McFadden,* 377 Pa.Superior Ct. 454, 547 A.2d 774 (1988), but the Commonwealth is entitled to all favorable inferences which may be drawn from the evidence. *Commonwealth v. Stoyko,* 504 Pa. 455, 475 A.2d 714 (1984).

Section 401 of the SWMA reads as follows:

No person ... shall store, transport, treat, or dispose of hazardous waste within this Commonwealth unless such storage, transportation, treatment, or disposal is authorized by the rules and regulations of the department; ... and, no person ... shall transport hazardous waste within the Commonwealth unless such person ... has first obtained a license for the transportation of hazardous waste from the department.

Section 606(f) of the SWMA, 35 P.S. § 6018.606(f), provides for criminal sanctions against persons who violate Section 401 of the SWMA:

Any person who stores, transports, treats, or disposes of hazardous waste within the Commonwealth in violation of section 401 ... shall be guilty of a felony of the second degree and, upon conviction, shall be sentenced to pay a fine

weight of the evidence. However, Downs and VHP filed a combined brief in support of the motions in question which explained in detail why they believed the evidence was insufficient and why the verdict was against the weight of the evidence; this brief is part of the certified record. Our Supreme Court has held in *Commonwealth v. Jones,* 478 Pa. 172, 386 A.2d 495 (1978), that issues set forth in a brief to the post trial motion court will preserve those issues for appellate review. *See Commonwealth v. Roberson,* 258 Pa.Superior Ct. 471, 393 A.2d 455 (1978) (when a defendant presents a brief to a post trial motion court and the brief is included in the certified record, the Superior Court is constrained to find the defendant's issue preserved). Therefore, the issues raised in the motions in question are preserved for review.

of not less than $2,500 but not more than $100,000 per day for each violation or to imprisonment for not less than two years but not more than ten years, or both.

The General Assembly explicitly provided in Section 606(i) of the SWMA, 35 P.S. § 6018.606(i), that with respect to Section 606(f) it was the legislative purpose to impose absolute liability for violations of that Section.[7]

■ The prosecution proceeded on the theory that Downs was guilty because of criminal negligence [8] and the trial judge charged the jury that, in order to convict, they must find Downs criminally negligent at a minimum.[9] But even under the theory of criminal negligence, a standard higher than the absolute liability standard articulated in Section 606(i) of the SWMA, we must conclude that there was sufficient evidence to convict Downs. The record reveals that Larry Hoffman informed Downs of the accumulation of hazardous waste at VHP and that Downs responded to Hoffman's concern by telling him that, in order to save money, the employees could take the waste home. Moreover, when employees took the waste home, Downs was notified by Hoffman that this oc-

7. The imposition of substantial fines and imprisonment based on absolute liability for violations of Section 401 of the SWMA does not offend due process under either the Constitution of the United States or the Pennsylvania Constitution. *Baumgardner Oil Co. v. Commonwealth,* 146 Pa.Commonwealth Ct. 530, 606 A.2d 617 (1992). Moreover, the limitation contained in Section 305 of the Crimes Code, 18 Pa.C.S. § 305(b), which provides that a defendant convicted of an offense on the basis of absolute liability is guilty of a summary offense, does not apply to convictions under the SWMA. *Id.*

8. Section 302(b)(4) of the Crimes Code, 18 Pa.C.S. § 302(b)(4), defines criminal negligence as follows:

A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

9. While the legislature provided that absolute liability is to be imposed for violations of the SWMA, the trial judge's charge to the jury that it must find Downs at a minimum criminally negligent, because it is a higher standard of proof than absolute liability, was harmless error.

curred. A jury could reasonably find that Downs was criminally negligent on the basis that Downs should have been aware of the substantial risk created by his policy of permitting employees to remove waste from the plant to save the cost of otherwise disposing of it; further, the jury could have reasonably concluded that Downs's policy set the stage for the employee, Dan Pelles, taking four 55–gallon drums of waste solvents from VHP and disposing of those drums in a field.[10]

■■■■ Downs next argues that the trial court erred in not granting him a new trial because the jury's verdict was contrary to the weight of the evidence. Whether a new trial should be granted because the verdict is against the weight of the evidence is an issue addressed to the sound discretion of the trial court and a new trial should be granted only when the verdict is so contrary to the evidence as to shock one's sense of justice. *Com. v. Stambaugh,* 355 Pa.Super. 73, 512 A.2d 1216 (1986). Absent such an abuse of discretion, a trial court's decision to deny a motion for a new trial will not be disturbed on appeal. *Commonwealth v. Pronkoskie,* 498 Pa. 245, 445 A.2d 1203 (1982). Our review of the record does not reveal that the verdict is so contrary to the evidence as to shock the conscience of the Court; hence, we hold that the trial court did not abuse its discretion in denying Downs a new trial.

■■■■ Downs and VHP contend that the trial court erred in admitting the testimony of Larry Hoffman, a former plant manager at VHP, because that testimony concerned prior bad acts of Downs which had occurred before the dumping incident. We disagree. The admissibility of evidence is a matter addressed to the sound discretion of the trial court, and an appellate court may only reverse rulings on admissibility upon a showing that the trial court abused its discretion. *Commonwealth v. Wallace,* 522 Pa. 297, 561 A.2d 719 (1989). Here,

10. There is no question that, under the absolute liability standard articulated in Section 606(i) of the SWMA, there is sufficient evidence on the record to support Downs's conviction. There is no dispute that the the waste solvent belonged to VHP, of which Downs was the president and sole shareholder, or that the waste was transported and disposed of illegally.

contrary to Downs's assertion, the testimony in question does not concern prior bad acts. Hoffman's testimony, instead, demonstrated Downs's knowledge of the waste disposal problem at VHP and his involvement with that problem; thus, Hoffman's testimony concerned events directly connected to the crime with which Downs was charged. The waste had been accumulating, had presented a problem, and it was the disposal of that accumulated waste and the elimination of the problem that was at issue. Therefore, we conclude that the trial court did not err in admitting Hoffman's testimony.[11]

■ Next, Downs contends that imposition of a prison term in this case offends Article 1, Section 9, of the Pennsylvania Constitution.[12] He argues that the trial court's decision to sentence him to prison is unconstitutional because the sentence imposed vicarious criminal responsibility on him for the actions of Dan Pelles, the individual who disposed of the waste solvents. He cites *Commonwealth v. Koczwara*, 397 Pa. 575, 155 A.2d 825 (1959), for the propositions that any attempt to invoke the doctrine of *respondeat superior* in a criminal action violates the basic principal that guilt must rest upon personal causation and, further, that it is unconstitutional to impose a prison term for crimes based on vicarious liability without violating the due process clause of the Pennsylvania Constitution. Downs, however, was not found guilty on a theory of vicarious liability. The jury found Downs guilty of violating

11. Downs also argues that Hoffman's testimony lacked probative value and was of limited relevance since Hoffman left his position prior to the dumping of the solvent. We, however, conclude that Hoffman's testimony was relevant and probative since it reveals Downs's connection to the illegal disposal of the waste solvents; hence, this argument is without merit.

12. Article 1, Section 9, of the Pennsylvania Constitution reads in pertinent part:

In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land....

the SWMA after being charged by the trial judge that it could only find Downs guilty if it determined beyond a reasonable doubt that Downs himself was responsible for violating the SWMA, at a minimum, on the theory of criminal negligence; his negligence. The trial court never charged the jury that Downs's guilt could be predicated solely upon the actions of Pelles. Downs was, therefore, found personally culpable for the crimes with which he was charged; hence, we hold that Downs's conviction does not violate Article 1, Section 9, of the Pennsylvania Constitution.[13]

Downs further contends that his prison term violates the Eighth and Fourteenth Amendments of the United States Constitution, and Article 1, Section 13, of the Pennsylvania Constitution. Specifically, he argues that his prison term amounts to cruel and unusual punishment because his sentence is excessive and disproportionate to the crime committed.

In *Harmelin v. Michigan,* —— U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), the United States Supreme Court held that a sentence of life without parole for possession of cocaine did not violate the Eighth Amendment prohibition against cruel and unusual punishments. Justice Scalia, joined by Chief Justice Rehnquist, concluded that the Eighth Amendment contains no proportionality guarantee; Justice Kennedy wrote a concurring opinion, joined by by Justices O'Connor and Souter, in which he concluded that a narrow proportionality principle applies to noncapital cases which prohibits sentences which are grossly disproportionate to the crime.

Even applying the narrow proportionality rule articulated by Justice Kennedy in *Harmelin,* Downs's sentence does not violate the Eighth Amendment. The fixing of prison terms for specific crimes is within the province of legislatures and not the courts and, thus, reviewing courts should grant substantial deference to a legislative determination of the punishments for particular crimes. *Id.; see also Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).

13. Because the trial court applied the criminal negligence standard in this case, we need not decide whether the SWMA is constitutional to the extent that it authorizes imprisonment on a theory of *vicarious* liability.

Downs's sentence of two to four years for violating Section 401 of the SWMA, to be suspended upon completion of nine months in the Lawrence County jail, is within the boundaries established by the General Assembly in Section 606(f) of the SWMA. In fact, Downs's sentence is lenient considering that Section 606(f) of the SWMA permits a trial court to impose a maximum of ten years in prison for violations of Section 401. Moreover, considering the harm that improper disposal of hazardous wastes may have on public health and the environment, Downs's sentence is plainly not grossly disproportionate to the crime committed. *See* Section 102 of the SWMA, 35 P.S. § 6018.102.

 The same considerations apply to our analysis under Article 1, Section 13, of the Pennsylvania Constitution which briefly provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, not cruel punishments inflicted." Under Pennsylvania law, the fixing of penalties for crimes is a legislative function and an act of the legislature is presumed to be constitutional. *Commonwealth v. Bryant*, 239 Pa.Superior Ct. 43, 361 A.2d 350 (1976). The burden of demonstrating the unconstitutionality of a legislative enactment is on the person asserting that position. *Id.* For the reasons stated above in our discussion of the Federal Constitution, we hold that Downs's sentence does not violate Article 1, Section 13, of the Pennsylvania Constitution.

 Last, Downs contends that the trial court committed a manifest abuse of discretion by imprisoning him. He argues that his sentence is in excess of the sentence deemed appropriate by the Sentencing Guidelines,[14] 204 Pa.Code § 303, and he contends that the trial court failed to consider mitigating factors which militated against placing him in prison. To preserve an issue challenging the discretionary aspects of sentence, an appellant must first preserve the issue in a timely motion to modify sentence pursuant to Pa.R.Crim.P. 1410. *Commonwealth v. Penrod*, 396 Pa.Superior Ct. 221, 578 A.2d 486 (1990). Our review of the record reveals that Downs

14. The Pennsylvania Commission on Sentencing is an agency of the Pennsylvania General Assembly created to develop sentencing guidelines. Section 2151 of the Judicial Code, 42 Pa.C.S. § 2151.

did not raise this issue in either his motion to modify sentence or his brief in support of that motion. Therefore, this issue is waived. Pa.R.A.P. 302. However, even if this issue were preserved for our review, Downs's contention would fail. The trial judge suspended Downs's sentence of two to four years and, instead, imposed a nine-month sentence. The nine-month sentence Downs received is well within the four-to-twelve-month sentencing range recommended by the Sentencing Guidelines, 204 Pa.Code § 303.9; hence, the trial court did not abuse its discretion in sentencing Downs.

Accordingly, the judgment of sentence is affirmed.

## ORDER

NOW, September 11, 1992, the order of the Court of Common Pleas of Lawrence County in the above-captioned matter is hereby affirmed.