COMMONWEALTH of Pennsylvania

v.

Michael W. FARMER and M.W. Farmer Company, Appellants.

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1999.

Decided April 5, 2000.

Gregory Barton Abeln, Carlisle, for appellants.

Mark A. Bellavia, Harrisburg, for appellee.

Joel R. Burcat, Harrisburg, for amicus curiae, PA Petroleum Marketers and Convenience Store Assoc.

Before SMITH, J., FRIEDMAN, J., and MIRARCHI, Jr., Senior Judge.

SMITH, Judge.

Michael W. Farmer and M.W. Farmer Company (the Company), of which Michael Farmer is president and sole shareholder (together, Farmer), appeal from the October 30, 1998 and January 6, 1999 orders of the Court of Common Pleas of Lycoming County that found both of them guilty of eight counts of a complaint charging them with violating provisions of the Solid Waste Management Act (SWMA), Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. §§ 6018.101–6018.1003, and imposed sentences.[1] The trial court sentenced Michael Farmer to an aggregate period of five years' probation and payment of a fine of $18,000. The court sentenced the Company to pay an aggregate fine of $67,000. Together they were ordered to pay $5,916.68 for the costs of prosecution.

Farmer questions whether the trial court erred in finding that the Attorney General and the former Department of Environmental Resources (DER), now the Department of Environmental Protection (DEP), did not violate Section 205(a)(6) of the Commonwealth Attorneys Act, Act of October 15, 1980, P.L. 950, *as amended,* 71 P.S. §§ 732–205(a)(6), where DER assertedly referred the matter to the Attorney General without conducting an investiga-

---

1. Michael Farmer and the Company were found guilty of the following Counts: Two—owning and operating a residual waste processing facility without a permit; Three—owning or operating a hazardous waste storage, treatment or disposal facility without a permit; Four—failing to label certain drums as hazardous waste; Seven—unlawfully dumping or disposing of solid waste; Ten and Twelve—transporting hazardous waste without a license; Eleven and Thirteen—causing or assisting in the violation of any order of the Department of Environmental Protection.

tion, and whether the trial court erred in permitting the Commonwealth to proceed against Michael Farmer on a theory of strict liability. Further, Farmer questions whether the court erred in failing to determine that the Commonwealth did not meet its burden of proof for failure to provide testimony or evidence that the materials tested or observed were conclusively either a "waste" or a "product."

Farmer's business includes contracting to remove underground storage tanks from residential, municipal, commercial and industrial sites. Often the remaining contents would be separated into sludge at the bottom, then water, then petroleum material, which might be gasoline, diesel fuel, kerosene, heating oil or crankcase oil. Usable material at the top would be pumped out first and either kept by the client or put into tanks with like material at Farmer's property. Unusable contents were pumped into drums for storage on Company property or into the vacuum truck and then into a 10,000–gallon aboveground storage tank. When the material had accumulated sufficiently, Farmer would take it to a waste oil recycling facility such as Lancaster Oil Company to be recycled or reused in some beneficial manner other than burning.

On or about July 13, 1992, an individual came to the Williamsport Office of the Attorney General, Environmental Crimes Section, and alleged that Farmer was removing underground gas storage tanks and was improperly dumping contaminated soil at a site along Route 15 in Armstrong Township south of Williamsport. The individual was questioned by Steven Dunkleberger, Operations Manager of the Bureau of Waste Management of DER, at the offices of the Attorney General but without participation of that office at that time. Dunkleberger provided information from the interview to Richard Bittle, Environ-

mental Protection Manager, who sent a memorandum to Leon Kuchinski, Chief of the Division of Environmental Enforcement, who decided to refer the matter to the Office of the Attorney General, Environmental Crimes Section.

On April 7, 1993, the Commonwealth along with DER executed a search warrant at Company property and seized business records, searched the premises and took samples of noticeably discolored ground and of the contents of some 55–gallon drums for testing. On June 22, 1993, DER issued a compliance order directing the Company not to remove hazardous or residual waste off-site without manifesting it as hazardous waste or obtaining prior approval. On July 13, 1993, DER took further samples from the 10,-000–gallon tank, which samples it shared with Farmer. On April 19 and May 20, 1994, shipments from Farmer to Lancaster Oil Company manifested as "oily water" were rejected. The first was rejected for having too low a flash point and the second for that reason plus high lead content.[2]

### I

Farmer first contends that the Attorney General and DER violated the Commonwealth Attorneys Act. It notes that the Supreme Court has held that pursuant to Article IV, Section 4.1 of the Pennsylvania Constitution, the powers of the Attorney General are solely those provided for by statute. *Commonwealth v. Carsia*, 512 Pa. 509, 517 A.2d 956 (1986). Section 205(a) of the Commonwealth Attorneys Act, 71 P.S. § 732–205(a), relating to prosecutions, limits the prosecutorial authority of the Attorney General to enumerated instances including: "(6) Criminal charges *investigated by* and referred to him by a Commonwealth agency arising out of enforcement provisions of the statute charging the agency with a duty to enforce its

2. The Court's review of the decision of the court of common pleas is limited to determining whether constitutional rights were violated or whether the trial court committed an

abuse of discretion or an error of law. *County of Schuylkill v. E & J Dismantling Co.*, 731 A.2d 223 (Pa.Cmwlth.1999).

provision." (Emphasis added.) Farmer contends that the evidence does not establish that DER "investigated" charges against it.

As Farmer concedes, the trial court determined that Dunkleberger's interview of the complainant constituted an investigation of the Armstrong Township complaint sufficient to satisfy the Commonwealth Attorneys Act. The court cited *Commonwealth v. Weidenmoyer*, 518 Pa. 2, 539 A.2d 1291 (1988), where the Supreme Court stated that an ordinary citizen who reports a crime stands on different ground than a paid police informer, and such a person's trustworthiness may be presumed. The Commonwealth notes that the Superior Court has held that under Section 206(a) of the Commonwealth Attorneys Act, 71 P.S. § 732–206(a), which specifies that the Attorney General has the power to investigate any criminal offense that he or she has the power to prosecute under Section 205, the Attorney General need only establish by a preponderance of the evidence that a factual basis existed that supported a reasonable belief of authority to prosecute. *Commonwealth v. Usa*, 411 Pa.Super. 474, 601 A.2d 1265 (1991).

■ The Court agrees that the entire proceedings against Farmer were not fatally defective under the Commonwealth Attorneys Act. As the trial court noted, the Office of Attorney General was not overreaching; DER had investigated Company property on several occasions before the complaint from the individual. Although DER might have conducted a more extensive investigation, the Court cannot accept the contention that DER's receipt of a citizen complaint and evaluation of it at several levels within the agency before referral to the Attorney General constituted no investigation at all.

**3.** Farmer acknowledges that a legislative enactment enjoys a presumption of constitutionality and that courts will not declare it unconstitutional unless it clearly, palpably and

## II

■ Next Farmer argues that the trial court erred in permitting the Commonwealth to proceed against Michael Farmer on a theory of strict liability. Section 401 of the SWMA, 35 P.S. § 6018.401, provides in part:

(a) No person or municipality shall store, transport, treat, or dispose of hazardous waste within this Commonwealth unless such storage, transportation, treatment or disposal is authorized by the rules and regulations of the department; ... and no person or municipality shall transport hazardous waste within the Commonwealth unless such person or municipality has first obtained a license for the transportation of hazardous waste from the department.

Farmer asserts that this is the first time that the Commonwealth has imposed strict felony liability upon an individual for an incident that did not involve illegal dumping or even a threat of pollution.

■ Farmer contends that Section 401 of the SWMA violates the due process clauses of the Fourteenth Amendment and of Article I, § 9 of the Pennsylvania Constitution.[3] Farmer cites *Downs v. Commonwealth*, 150 Pa.Cmwlth. 455, 616 A.2d 39 (1992), where an individual and the company of which he was the sole shareholder were charged with violations of Section 401 and other sections of the SWMA for abandoning drums containing hazardous waste in a field. The trial court sentenced the individual to a term of imprisonment. The Court noted that Section 606(f) of the SWMA, 35 P.S. § 6018.606(f), provides that any person who violates Section 401, or who transports, treats or disposes of hazardous waste "in violation of any order of the department" is guilty of a second degree felony, and Section 606(i), 35 P.S. § 6018.606(i), expressly provides

plainly violates the Constitution. *See In re Petition to Increase Millage Limit*, 166 Pa. Cmwlth. 161, 646 A.2d 61 (1994).

that "[w]ith respect to the offenses specified in subsections (a), (b), (c) and (f), it is the legislative purpose to impose absolute liability for such offenses." This Court stated in *Downs* that the trial court's charging the jury that it must find the defendant at a minimum criminally negligent, when the statute imposes strict liability, was harmless error where the jury had convicted on the basis of ample evidence even under the higher standard. Therefore *Downs* provides Farmer no support.

Farmer acknowledges that it is involved in a highly regulated industry and that Section 401(b) of the SWMA clearly subjects persons who store, transport, treat or dispose of waste to liability for harm even though they have exercised the utmost care. Nevertheless, Farmer contends that statutes and regulations relating to the handling of petroleum products are so unclear as to render application of strict criminal liability to be fundamentally unfair. He asserts that he was regulated by DER for years, and no one ever told him that blending petroleum products would constitute creating a hazardous waste requiring a permit. In addition, DER informed Michael Farmer in a letter in 1982, Defendants' Ex. 1, that it was up to the generators, i.e., his customers, to determine that the materials they were giving him were hazardous. None ever did.[4] Michael Farmer asserts that pursuant to authorization under 25 Pa.Code § 262.11(a)(3)(ii),[5] he determined that he did not need a hazardous waste transporter's permit by applying his knowledge of the hazardous characteristic of the waste.

Michael Farmer is a petroleum engineer who realizes that petroleum products have a low flash point. Farmer asserts, however, that mixing products together and shipping them off for recycling should not be interpreted as handling a hazardous waste. The Supreme Court in *Commonwealth v. Barud*, 545 Pa. 297, 681 A.2d 162 (1996), noted that a statute is unconstitutionally "void for vagueness" if it fails to give a person of ordinary intelligence fair notice that contemplated conduct is forbidden, and it is fatally "overbroad" if it punishes constitutionally protected activity as well as illegal activity. Farmer asserts that interpretations of the SWMA may differ between agencies, and it urges the Court to invalidate strict criminal liability for an individual defendant.

The Court notes, however, that it was specifically held in *Downs* that the imposition of substantial fines and imprisonment based upon absolute liability does not offend due process under the federal or state Constitutions. *Downs*, 616 A.2d at 43 n. 7 (citing *Baumgardner Oil Co. v. Commonwealth*, 146 Pa.Cmwlth. 530, 606 A.2d 617 (1992)).[6] The Court has held consistently that certain strict liability or absolute liability criminal enactments are constitution-

---

4. Michael Farmer was advised to ask a client whether the waste it shipped was hazardous and, if so, to what class it belonged. If any waste was hazardous, Michael Farmer was advised that it would be necessary to obtain a hazardous waste transporter license. DER withdrew the Company's current application for a hazardous waste transporter license but stated that it could reapply if the Company was informed that any of the waste was hazardous.

5. By final rulemaking of May 1, 1999, immediately effective, the Environmental Quality Board deleted all existing chapters in Article VII of Title 25 Pa.Code, relating to hazardous waste management, including Chapters 260, 261 and 262, and replaced these rules with new regulations in Chapters 260a, 261a, 262a

and so forth. 29 Pa. B. 2367. The former regulations were in effect when Farmer was convicted in October 1998 and sentenced in January 1999, and they will be referred to in this opinion as if presently effective.

6. In *Baumgardner Oil Co.* the Court again rejected a challenge to the strict liability provisions of the SWMA based upon claimed violations of due process. The Court quoted *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), as explaining that statutes creating strict liability for "public welfare" crimes do not specify intent as a necessary element as a matter of policy because they proscribe the type of conduct that a reasonable person should know may pose a health or safety threat and is highly regulated.

al. In *Waste Conversion, Inc. v. Commonwealth*, 130 Pa.Cmwlth. 443, 568 A.2d 738 (1990), the Court held that provisions of the SWMA making it unlawful for a person or municipality to in any way transfer residual or hazardous waste to a second person if the waste is later dumped without a permit, and imposing strict liability, did not violate due process. A corporation licensed to operate in the business of hazardous waste removal owes the highest duty of responsibility to ensure that the citizens are protected from the dangers that are necessarily a part of waste disposal. The appellant's failure to maintain control over independent contractors that it hired as part of the waste disposal process was not a defense.

### III

■ Finally, Farmer asserts that the Commonwealth did not meet its burden to show that the substances taken from the storage tank and transported to Lancaster Oil Company were conclusively a waste and not subject to an exclusion or exception. Farmer notes that the person who tested the materials, called as a witness for the Commonwealth, stated that he regarded the materials as "waste oil," although he recognized that they would not satisfy the regulatory definition of waste oil. Farmer argues that it regarded the material as being "product" or "coproduct" that was simply combined; it again asserts that it had the right to make the determination as to whether the material was a hazardous waste under 25 Pa.Code § 262.11(a)(3)(ii).[7]

Farmer acknowledges that this Court previously rejected its argument that materials taken from the underground storage tanks and brought to Company property were not waste, in ruling upon appeals from the trial court's grant of Farmer's petition for writ of habeas corpus to the limited extent of dismissing one count of the criminal information. *Commonwealth v. Farmer* 695 A.2d 989 (Pa.Cmwlth., Nos. 1759, 1760 and 1958 C.D. 1996, filed May 28, 1997). Farmer points out that the Storage Tank and Spill Prevention Act, Act of July 6, 1989, P.L. 169, *as amended*, 35 P.S. §§ 6021.101–6021.2104, provides for training and certification of underground storage tank removers but does not mention the securing of hazardous waste permits. In regard to the Court's previous ruling that testimony at the hearing made out a prima facie case for all but one of the violations charged, Farmer contends that the testimony at trial that the material in question was "waste oil" and Michael Farmer's testimony that he "used" the material by taking it to a recycling facility which he paid to accept it constitute new evidence beyond that of the earlier proceeding.

The Commonwealth notes that the standard for reviewing a challenge to the sufficiency of the evidence is whether, viewing all of the evidence admitted at trial together with all reasonable inferences therefrom in the light most favorable to the verdict winner, the fact finder reasonably could have found every element of the crime to be established beyond a reasonable doubt. *Commonwealth v. McKeever*, 455 Pa.Super. 604, 689 A.2d 272 (1997). As to the transportation of hazardous wastes, the only disputed point is whether the material Farmer transported was a hazardous waste. The Commonwealth refers to the trial court's reasoning that the material met the definition of "waste" under 25 Pa.Code § 260.2: "Material that is abandoned or disposed, including abandoned or disposed products or coproducts." It is "hazardous waste" if it is not covered by the exception in 25 Pa.Code § 261.3(h) and is not covered by an exclusion specified in

---

7. Farmer cites 25 Pa.Code § 261.6(a)(2)(iv) as the source of a possible exception to regulation of transported material as hazardous waste. The regulation applies only to "waste oil" as defined in the regulations, and it does not establish an exclusion from regulation for the combination of waste materials at issue here.

25 Pa.Code § 261.4, and it exhibits one or more of the Subchapter C characteristics.[8]

The Commonwealth notes that Farmer was aware that the 10,000–gallon tank included gasoline, kerosene, oil and diesel fuel components, and it was aware of the July 1993 test results at least ten months before the attempted April and May 1994 shipments to Lancaster Oil Company. The regulation defining hazardous waste, 25 Pa.Code § 261.3, provides in subsection (g): "When it is not immediately possible to determine if a material will be a hazardous waste, the material shall be managed as a hazardous waste until the determination is made and indicates it is not." Although 25 Pa.Code § 262.11(a)(3)(ii) does provide some authority for a generator such as Farmer to make its own determination, subsection (a)(3)(i) also provides for the generator to determine whether solid waste is hazardous by testing it. Further, as the trial court noted, 25 Pa.Code § 262.11(e) provides: "A determination that a waste is not hazardous under subsection (a)(3) and (b) does not preclude the Department, using the characteristics and testing methods set forth in Chapter 261 from determining the waste to be hazardous." Where there is any question, the material must be tested, and a defendant may not escape liability simply by declaring materials to be non-hazardous.

The definition of "waste oil" in 25 Pa. Code § 260.2 is: "Oil refined from crude oil or synthetically produced, used, and as a result of the use, contaminated by physical or chemical impurities." The Court rejects as untenable Farmer's position that the mixture of any number of petroleum-based products in the 10,000–gallon tank, contaminated with water and with sludges and other materials and resulting, at least in some instances, in a noxious substance exhibiting specified characteristics of hazardous waste, was within the regulatory definition of "waste oil." Although waste oil may have been among some constituents of material Farmer transported, the Court is convinced that the Commonwealth met its burden of proving that the material was a hazardous waste.[9] The Court therefore concludes, after reviewing the record and the trial court's thorough decision in this case, that ample evidence supported the determinations of the fact finder that Farmer stored and transported hazardous waste without permits or a license. The orders of the trial court are affirmed.

### *ORDER*

AND NOW, this 5th day of April, 2000, the orders of the Court of Common Pleas of Lycoming County are affirmed.

---

**8.** Section 261.3(h) excepts waste oil that is hazardous only because it exhibits characteristics of hazardous waste under Subchapter C of Chapter 261 but which has not been mixed with a hazardous waste and which is destined to be recycled or reused in some manner other than burning for energy recovery. Subchapter C characteristics include "ignitability" if a liquid exhibits a flashpoint of less than 60 degrees Celsius as determined by specified testing methods, 25 Pa.Code § 261.21, and toxicity, if it meets or exceeds the level of contaminants specified in Table I of 25 Pa. Code § 261.24.

**9.** Amicus curiae Pennsylvania Petroleum Marketers and Convenience Store Association contends that 25 Pa.Code § 261.4(a)(17) excludes from the definition of hazardous waste "Petroleum-contaminated media and debris that fail the test for Toxicity Characteristics of § 261.4 (Hazardous Waste Codes D018 through D043 only) [and are subject to federal corrective action regulations]." Although amicus argues that the parenthetical provision is a trigger and not a limitation, this Court agrees with the trial court that the provision clearly is intended to limit the exclusion. When other hazardous waste codes are found from testing, the material is hazardous.