COMMONWEALTH of Pennsylvania

v.

**David R. PACKER, Appellant.**

**Commonwealth of Pennsylvania**

v.

**Glenn S. Holmes, Appellant.**

Commonwealth Court of Pennsylvania.

Argued March 6, 2000.
Decided May 9, 2000.
Reargument Denied July 17, 2000.

---

Hugh J. Bracken, Media, for appellant, David R. Packer.

David R. Dearden, Wayne, for appellant, Glenn S. Holmes.

Ronald T. Williamson, Norristown, for appellee.

Before SMITH, J., FRIEDMAN, J., and JIULIANTE, Senior Judge.

FRIEDMAN, Judge.

David Packer and Glenn Holmes (together, Defendants) appeal from the order of the Court of Common Pleas of Chester County (trial court) denying Defendants'

post-sentence motions.[1] Defendants were convicted for violations of the Solid Waste Management Act[2] (SWMA).

Glenn Holmes owns property on Anderson Road (the Property) in East Coventry Township (Township). In October 1993, Robert Strutynski, a Township employee, observed Packer using a track hoe to bury tires on the Property. Strutynski called the police and the Township secretary to report what he had observed. No one was arrested at that time; however, the Pennsylvania Office of the Attorney General subsequently conducted a search at the northwest corner of the Property. During the search, several trenches were dug, revealing tires at a depth of six to eight feet. Because the Department of Environmental Resources (DER), now the Department of Environmental Protection (DEP),[3] never issued a permit allowing the dumping or depositing of waste tires, Defendants were charged with violating section 610(1) of the SWMA, 35 P.S. § 6018.610(1),[4] which prohibits dumping or depositing solid waste without a permit.

At Defendants' criminal jury trial, Strutynski testified on behalf of the Commonwealth. Strutynski stated that, upon arriving at the Property, he observed a track hoe next to an excavated trench. According to Strutynski's rough estimate, 80 to 100 feet of the trench had been covered over; however, a hole, 20 to 25 feet long and 20 feet deep, remained. Strutynski saw tires protruding from the sides of the excavated hole and saw clean tires at the bottom of the hole. Strutynski testified that he saw Packer covering the clean tires at the bottom of the hole with dirt. Not only did Strutynski testify about what he observed, Strutynski also was offered as an expert in excavation and, in that capacity, gave his opinion that tires were being buried on the Property. (R.R. 35–36; 46–48a.)

Glenn Holmes' brother, Craig Holmes, also testified on behalf of the Commonwealth, relating an incident that occurred in 1993 while he was assisting his brother in cleaning up the Property by loading tires from the Property into trailers. Craig Holmes stated that, toward the end of one particular week, ten to fifteen trailers had been filled with tires and that only one and a half trailers remained empty; however, there was still a six to ten foot high pile of tires that remained to be put in the trailers. Craig testified that he did not work that weekend, and when he returned to work the next week, three quarters of the tires in the pile were missing, although the one and a half trailers still were empty. According to Craig, he did not know where the tires went, but, later, while operating a bulldozer on the Property, he became submerged in mud and clay and had to dig down six feet to extricate his bulldozer. Craig stated that when he asked Defendants why his bulldozer sank into the ground, one of them said, "you mean you don't know that the tires were buried there." (R.R. at 108a.) Craig testified that, in that conversation, he was told that a track hoe was brought to the property, a 20 foot hole was dug, tires were pushed into the hole and the hole was

1. Packer states in his brief that he is appealing the order entering the judgement of sentence. However, we note that where a defendant files a post-trial motion pursuant to Pa. R.Crim.P. 1410, the notice of appeal shall be filed within 30 days of the entry of the order deciding the motion.

2. Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. §§ 6018.101–6018.1003.

3. The Department of Environmental Resources was renamed the Department of Environmental Protection, effective July 1, 1995.

Section 501 of the Conservation and Natural Resources Act, Act of June 28, 1995, P.L. 89, 71 P.S. § 1340.501.

4. Defendants were also charged with violating section 301 of the SWMA, 35 P.S. § 6018.301, which makes it unlawful to dispose, process, or store any residual waste in a manner contrary to the rules and regulations of DEP or to any permit issued by DEP. The trial court granted Defendant's motion for a directed verdict as to this charge, and the Commonwealth did not appeal that ruling.

covered up with approximately five to eight feet of dirt. (R.R. at 108a–11a, 139a–43a.)

Packer testified in defense of the charges against him. Packer stated that, prior to 1993, Holmes hired Packer as a subcontractor on a per job basis. However, in 1993, Holmes hired Packer on a full-time basis, as a laborer, equipment operator and truck driver. (R.R. at 532a.) Packer further testified that, on October 15, 1993, while using the track hoe to remove tires from their rims, he inadvertently discovered that tires were buried underground. Packer claimed that he called Holmes to inform him of this discovery, and Holmes told him to "follow them." Packer explained that he was digging the tires out of the ground when Strutynski confronted him and accused him of burying tires. Packer testified that he never "intentionally" buried tires, but admitted that when removing tires from the hole, he accidentally knocked some tires back into the hole with the track hoe. (R.R. 534–42a.)

At the conclusion of the trial, the jury found Defendants guilty of violating section 610(1) of the SWMA, 35 P.S. § 6018.610(1). The trial court sentenced Packer to one to twelve months, imposed a fine of $2,500 and ordered restitution of $2,300 to the Township. The trial court sentenced Holmes to two to twelve months, imposed a fine of $10,000 and ordered restitution of $2,300 to the Township. Defendants filed post-sentence motions, which were denied. This appeal followed, with Packer and Holmes each raising separate arguments.

5. Our standard of review in assessing the propriety of a common pleas court decision is limited to a determination of whether constitutional rights have been violated or whether the common pleas court abused its discretion or committed an error of law. *Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882 (1994).

6. Solid waste is defined as: "Any waste, including but not limited to, municipal, residual, or hazardous wastes, including solid,

**Packer**

On appeal,[5] Packer argues that section 610(1) of the SWMA was not intended to impose criminal liability upon "mere employees." We agree.

Section 610(1) of the SWMA makes it unlawful for "any person" to "dump or deposit, or permit the dumping or depositing, of any solid waste onto the surface of the ground or underground ...by any means, unless a permit for the dumping of such solid waste has been obtained from the department." 35 P.S. § 6018.610(1). "Person" is defined as any "individual ... or any other legal entity ... recognized by law as the subject of rights and duties." Section 103 of the SWMA, 35 P.S. 6018.103. Thus, to convict a person for violating section 610(1), the Commonwealth must prove beyond a reasonable doubt that a person who had a duty to obtain a permit dumped or deposited solid waste without obtaining a permit.

Packer does not dispute the fact that a permit was not obtained from DEP. Moreover, Packer does not argue that waste tires are not solid waste subject to regulation under the SWMA.[6] Packer merely contends that, because a "mere employee" is under no obligation to obtain a permit, he cannot be subject to criminal liability under section 610(1). The Commonwealth argues that section 610(1) applies to anyone, including employees acting at the behest of their employers. The issue of whether or not a "mere employee," who has no duty to obtain a permit, may be criminally charged with violating section 610(1) appears to be an issue of

liquid, semisolid, or contained gaseous materials." Section 103 of the SWMA, 35 P.S. § 6018.103. We have held that an accumulation of waste tires constitutes "municipal waste" within the meaning of section 103 of the SWMA. *Booher v. Department of Environmental Resources,* 149 Pa.Cmwlth. 48, 612 A.2d 1098 (1992); *Starr v. Department of Environmental Resources,* 147 Pa.Cmwlth. 196, 607 A.2d 321 (1992).

first impression in this Commonwealth.[7] In deciding this issue we are mindful of the underlying policy of the SWMA.

The SWMA was passed because improper and inadequate solid waste disposal practices create public health hazards and environmental pollution. Section 102 of the SWMA, 35 P.S. § 6108.102. To protect the public and the environment, the SWMA requires permits for the operation of municipal waste disposal systems. Section 102(3) of the SWMA, 35 P.S. § 6018.102(3). The power to issue permits and specify the terms and conditions thereof resides in DEP. Section 104(7) of the SWMA, 35 P.S. § 6018.104(7). Thus, if a person intends to operate a municipal waste disposal system, the person must apply for, and obtain, a permit from DEP.

The process by which to obtain a permit is set forth in Article V of the SWMA. Persons desiring permits must fill out a written application accompanied by plans and designs prepared by a registered professional engineer. Section 502(a) of the SWMA, 35 P.S. § 6018.502(a). The application must set forth the manner in which the "operator" plans to comply with various environmental laws, and the "operator" is subject to sanctions and penalties imposed by the SWMA for noncompliance with those environmental laws. Section 502(d) of the SWMA, 35 P.S. § 6018.502(d). Furthermore, the "operator" must certify that he has liability insurance, section 502(e) of the SWMA, 35 P.S. § 6018.502(e), and file a minimum $10,000 bond with DEP for the land affected by the facility. Section 505(a) of the SWMA, 35 P.S. § 6018.505(a). Under the SWMA, persons intending to use their land, or the land of another, as a solid waste disposal area, must meet the above requirements in order to obtain a permit.

Here, the record is clear that Packer merely worked for Holmes as a laborer. As a "mere employee" of Holmes, Packer would have neither the incentive, nor the authority, to apply for and obtain a permit to operate a solid waste disposal area on Holmes' property. That would be Holmes' responsibility. Nevertheless, the Commonwealth would have this court interpret section 610(1) to apply to all individuals, including "mere employees," who have no duty to obtain a permit. However, such an interpretation would lead to unreasonable and absurd results.[8] Although the SWMA is far from a model of precise draftsmanship, it is obvious that the legislature never intended to include "mere employees" within the ambit of those persons to be held absolutely criminally liable

---

7. Interestingly, no reported decision of this Commonwealth involves a criminal prosecution of a non-supervisory, "mere employee," or laborer, under section 610(1). *See e.g., Commonwealth v. Scarpone*, 535 Pa. 273, 634 A.2d 1109 (1993) (general manager); *Commonwealth v. Parker White Metal Co.*, 512 Pa. 74, 515 A.2d 1358 (1986) (companies and owners); *Commonwealth v. Fiore*, 445 Pa.Super. 401, 665 A.2d 1185 (1995), *appeal denied*, 544 Pa. 623, 675 A.2d 1243 (1996), *cert. denied in part*, 526 U.S. 1038, 119 S.Ct. 1332, 143 L.Ed.2d 497 (1999) (landowner); *Baumgardner Oil Co. v. Commonwealth*, 146 Pa. Cmwlth. 530, 606 A.2d 617, *appeal denied*, 531 Pa. 648, 612 A.2d 986 (1992) (landowner); *Downs v. Commonwealth*, 150 Pa. Cmwlth. 455, 616 A.2d 39 (1992) (company and president/sole shareholder); *Cullenen v. Commonwealth*, 138 Pa.Cmwlth. 508, 588 A.2d 988 (1991) (independent contractor); *Waste Conversion, Inc. v. Commonwealth*, 130 Pa.Cmwlth. 443, 568 A.2d 738, *appeal denied*, 525 Pa. 621, 577 A.2d 892 (1990), *cert. denied*, 498 U.S. 898, 111 S.Ct. 253, 112 L.Ed.2d 211 (1990) (company).

8. We note that the General Assembly does not intend a result that is unreasonable or absurd. Section 1922 of the Statutory Construction Act, 1 Pa.C.S. § 1922. However, if we interpreted section 610(1) as applying to "mere employees," unreasonable and absurd results would occur. All employees in this Commonwealth would risk criminal sanction when handling solid waste if their employers failed to obtain necessary permits. Moreover, because the SWMA imposes absolute criminal liability, *see* Section 606(i) of the SWMA, 35 P.S. § 6018.606(i) and *Baumgardner Oil Co.*, it would be no defense to employees that their employers explicitly told them that the necessary permits had been obtained.

under section 610(1).[9] We, therefore, hold that "mere employees," who have no duty to obtain a permit, may not be held criminally liable under section 610(1) of the SWMA, 35 P.S. § 6018.610(1), and, accordingly, we reverse the conviction of Packer.

### Holmes

■ Next, we address the arguments raised by Holmes. First, Holmes argues that the evidence of accomplice liability was insufficient as a matter of law and that the guilty verdict against Holmes was against the weight of the evidence. We disagree.

> In evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Furthermore, a mere conflict in the testimony of the witnesses does not render the evidence insufficient because it is within the province of the factfinder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence.

*Commonwealth v. Montini*, 712 A.2d 761, 767–68 (Pa.Super.1998) (citations and quotations omitted). The SWMA prohibits dumping or depositing solid waste onto the surface of the ground or underground by any means, unless a permit has been obtained from DEP. 35 P.S. § 6018.610(1). As previously stated, there is no dispute that waste tires constitute solid waste and Holmes failed to obtain a permit from DEP permitting the burying of tires on the Property. Thus, the only issue for the jury's consideration was whether Packer was burying tires and whether Holmes was guilty as an accomplice to such burying as charged.

A person is an accomplice of another if, with the intent of promoting or facilitating the commission of an offense, he or she solicits the other person to commit the offense or aids, agrees or attempts to aid the other person in planning or committing the offense. Section 306(c) of the Crimes Code, 18 Pa.C.S. § 306(c). Strutynski testified that Packer, Holmes' employee, was burying tires on Holmes' property. Craig Holmes testified that he observed piles of tires on the Property and that he returned after the weekend to find the tires gone even though the empty trailers remained empty. Craig also testified regarding a conversation he had with Defendants, during which Defendants told him that tires were buried on the Property.[10] Viewing this evidence in the light most favorable to the Commonwealth, together with all reasonable inferences therefrom, we conclude that the jury could have found that each and every element of accomplice liability was established beyond a reasonable doubt.

■ Holmes also argues, without citing any authority, that section 610(1) of SWMA is not intended to criminalize burying tires on property and, if so construed, it is unconstitutionally vague and, thus, deprives him of due process. We disagree with both contentions. Holmes suggests that, because the tires were present when he purchased the property and there was no evidence that either Holmes or Packer brought the tires to the property, he was

9. We note the conspicuous absence of criminal prosecutions of "mere employees" in the reported cases. (*See supra* note 6.)

10. Craig Holmes was unable to recall which Defendant stated that tires had been buried on the property; however, he testified that both were present when the conversation took place. Furthermore, although neither Defendant said that he had buried the tires, Craig Holmes testified that it was his impression from the conversation that the tires had been buried recently. (R.R. at 143a.)

at liberty to move the tires from one location on the property to another, including burying the tires. We cannot agree that Holmes had the right to bury the tires because the SWMA clearly prohibits the dumping or depositing of solid waste "underground." 35 P.S. 6018.610(1).[11]

■ Moreover, we hold that section 610(1) of the SWMA is not unconstitutionally vague. A statute is void for vagueness when it fails to define an offense with sufficient definiteness so that ordinary persons can understand what conduct is prohibited. *Baumgardner.* The requirements of due process are satisfied if the statute in question contains reasonable standards to guide prospective conduct. *Id.* Section 610(1) of SWMA provides sufficient warning as to what acts are proscribed. Under that provision, Holmes can reasonably be expected to understand that his burying tires is covered under section 610(1), which clearly prohibits the dumping or depositing of solid waste onto the surface of the ground or underground without a permit. Because this prohibition is definite enough to inform an ordinary person of what he or she can and cannot do, it is not unconstitutionally vague. *See also Baumgardner* (rejecting a challenge that the definition of solid waste contained in the SWMA is unconstitutionally vague).

■ Finally, Holmes argues that the trial court erred in permitting Strutynski to offer his "expert" opinion that Packer was burying tires. Pa.R.E. 702 provides:

If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill,

experience, training or education may testify thereto in the form of an opinion or otherwise.

Although we question the need to qualify Strutynski as an expert in excavation, Holmes fails to show how he was prejudiced by this testimony. Prior to giving his "expert" opinion, Strutynski testified at length as to what he observed. Specifically, Strutynski saw Packer operating a track hoe next to an excavated trench, clean tires at the bottom of the trench, and Packer covering the tires with dirt. Simply put, the "expert" opinion elicited from Strutynski, that Packer was burying tires, merely summarized Strutynski's prior lay testimony. Moreover, the trial court cured any potential prejudice when it gave the following jury instruction:

I permitted testimony with respect to some expertise.... But just because a person has a special skill and I permitted them to testify giving their opinion, does not necessarily mean you have to accept this opinion.... [T]he fact that a person who claims to be an expert has offered opinion testimony, does not mean that you are bound to accept that testimony, or just because I permit someone to offer an opinion does not mean that you must accept that opinion as factually accurate. It is up to you to weigh and balance the testimony and give the testimony whatever weight you believe that it is deserving.

(R.R. 638–40a.) In light of this instruction and the fact that Strutynski's "expert" opinion merely reiterated his lay eyewitness testimony, we conclude that the admission of Strutynski's expert opinion here does not mandate a reversal.

---

11. For this reason, we reject Holmes' contention that the trial court erred in failing to instruct the jury as follows:

In order to find that a person dumped or disposed of waste on the surface or under the ground, you must find, beyond a reasonable doubt, that the person charged introduced the waste to the site where the alleged dumping or disposing occurred

with the intention of leaving it on that site. The mere moving or relocation of the waste from one point on the surface to another *or from the surface to the underground does not constitute dumping.*

This is a misstatement of the law because, as stated above, the plain language of section 610(1) prohibits dumping or depositing solid waste underground.

For the above reasons, we reverse the conviction of Packer and affirm the conviction of Holmes.

## *O R D E R*

AND NOW, this 9th day of May, 2000, it is hereby ordered as follows:

(1) The order of the Court of Common Pleas of Chester County (trial court), at No. 1603–98, entered January 21, 1999, is hereby reversed.

(2) The order of the trial court, at No. 1596–98, entered January 21, 1999, is hereby affirmed.