Joseph Wargo, Appellant *v.* Commonwealth of Pennsylvania, Appellee.

McAdoo Association, E. L. Payer, Secretary-Treasurer, Appellant *v.* Commonwealth of Pennsylvania, Appellee.

Argued December 13, 1982, before Judges BLATT, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Ronald R. Pellish,* for appellants.

*Randall J. Brubaker,* Special Deputy Attorney General, for appellee.

OPINION BY JUDGE CRAIG, January 25, 1983:

The appellants, as defendants, were convicted before a district justice, and, pursuant to a hearing on

appeal, also before Judge TOOLE of the Court of Common Pleas of Luzerne County, of violating Section 9 (1) of the Pennsylvania Solid Waste Management Act;[1] they have appealed the convictions and fines imposed.

As of 1978, the time period involved here, Section 9(1) made it unlawful for any person to "[d]ump or deposit . . . any solid wastes onto the surface of the ground . . . without having obtained a permit. . . ." The Act, in Section 3(3), defined solid waste to include "liquid waste materials resulting from industrial . . . activities."[2] Section 7(a) of the Act[3] made it unlawful for any person to use their own land or "the land of any other person . . . as a . . . disposal area of a solid waste management system . . . without a permit." Finally, Section 3(4) defined a solid waste management system as the "entire process of storage, collection, transportation, processing and disposal of solid wastes by any person engaging in such process as a business. . . ."

According to the record, the evidence before Judge TOOLE established that defendant McAdoo Associates operated a facility engaged in the business of accepting and processing industrial waste from a number of customers. Defendant Payer was an officer of McAdoo Associates, and defendant Wargo was one of the employees.

In July 1978, according to testimony, defendant Wargo sought permission from employees of the Jeddo-Highland Coal Company to dump a liquid substance onto that company's roads. Although the com-

---

[1] Act of July 31, 1968, P.L. 788, *as amended,* repealed by the present Solid Waste Management Act, Act of July 7, 1980, P.L. 380, §1001, 35 P.S. §6018.1001. Section 9(1) of the repealed act was *formerly* 35 P.S. §6009(1).

[2] *Formerly* 35 P.S. §6003(3).

[3] *Formerly* 35 P.S. §6007(a).

pany denied permission, defendant Wargo nevertheless discharged liquid onto their roadway on that date and again two days later. On the next night employees of the company intercepted Wargo when he returned with the same truck and barred him from making any further discharges.

According to the coal company's workers, the dumped liquid emitted a strong noxious odor which caused breathing difficulties and, as to one worker, vomiting. The witnesses described it as being clearly different from oils used for dust control. Defendant Wargo acknowledged that the liquid came from the McAdoo plant, and defendant Payer admitted that the liquids were waste from the International Flavors and Fragrances Company, accepted by McAdoo for processing. A stipulation established that the defendants had no permit for dumping solid waste.

The defendants seek to characterize their activity as the oiling of roads for dust control. On the basis of that factual premise, the defendants first raise two issues:

1. Did the Solid Waste Management Act require a permit to be obtained for depositing oil on roadways for dust control purposes?

2. Did the Commonwealth subject the defendants to discriminatory prosecution, in that permits were not required for the oiling of roadways for dust control?

We must reject these issues as spurious because the evidence in the record does not support the factual premise. The testimony, including testimony from the defendants themselves, established that the liquid material was waste from the McAdoo plant, and that their disposal activity received neither permission nor compensation from the Jeddo-Highland Coal Company.

Moreover, because oil used for dust control on roads does not cause vomiting, we must regard Judge Toole's findings, rejecting defendants' premise, as well founded.

Of more substance is the final issue which defendants' brief poses:

> Was the Commonwealth's evidence sufficient to establish guilt beyond a reasonable doubt in that the testimony identified the dumped material by sensory description with respect to sight and smell rather than by the use of scientific laboratory tests?

Defendants rely on *North American Coal Corp. v. Commonwealth*, 2 Pa. Commonwealth Ct. 469, 279 A.2d 356 (1971), in which we held that, although visual tests are admissible evidence, nevertheless, "when recognized scientific tests are available and practical, courts must insist upon their use in presentation." 2 Pa. Commonwealth Ct. at 477, 279 A.2d at 360. However, in *North American,* the violation involved a regulation which prohibited smoke darker than No. 2 on the Ringelmann Smoke Chart and also prohibited more than 150 micrograms of suspended particulate matter per cubic meter of air or "0.6 milligrams of particle fall per centimeter per month at any time." *North American,* 2 Pa. Commonwealth Ct. at 475, 279 A.2d at 360. The same regulation was involved in *Bortz Coal Company v. Commonwealth,* 2 Pa. Commonwealth Ct. 441, 279 A.2d 388 (1971), on which defendants also rely.

Obviously, the straightforward question of identifying liquid as industrial waste or road oil is markedly distinguishable from the sophisticated parameters involved in *North American* and *Bortz.* In this case, the necessity for laboratory tests simply is not present.

Accordingly, we must conclude that Judge Toole's key finding, that the defendants violated the Act by

dumping solid waste material without a permit, is well supported by the record, and we affirm the convictions.

## Order

Now, January 25, 1983, the sentence of the Court of Common Pleas of Luzerne County, dated May 18, 1979, is affirmed.