612 A.2d 1098

**Gerald E. BOOHER, Petitioner,**

v.

**DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 6, 1992.

Decided May 18, 1992.

Publication Ordered July 16, 1992.

50

Harvey B. Reeder, for petitioner.
David Wersan, Asst. Counsel, for respondent.

Before McGINLEY and SMITH (P.), JJ., and NARICK, Senior Judge.

McGINLEY, Judge.

Gerald E. Booher (Booher) petitions for review of an order of the Environmental Hearing Board (EHB) imposing a modified civil penalty of $14,000 thereby reducing a $20,000 civil penalty assessment imposed upon Booher by the Department of Environmental Resources. We affirm.

Booher owns a 130–acre farm in Cromwell Township, Huntington County. In October of 1987, Booher was approached by Roger Pesco (Pesco) concerning the possible placement of used tires on his property. Although Booher first declined, he later agreed after reviewing materials showing tires being used as a possible fuel source. Willie Webb (Webb), at the direction of Pesco, began bringing tires on the Booher's property. These tires were neither retreadable nor resaleable. Webb paid Pesco $65.00 per truckload of tires placed on Booher's property. In turn, Pesco paid Booher $100 per month for managing the tires. Webb retained ownership of the tires.

In January of 1988, in response to a call from the Shirleysburg Township secretary, an Operations Supervisor with DER's Bureau of Waste Management, Jeffrey Stout (Stout), accompanied by Township Supervisors, visited the Booher property. During this visit, Stout spoke to Webb's son, Curtis Webb, who was bringing tires onto the property.

On February 9, 1988, Stout telephoned Booher to explain that tires should not be brought onto his property without complying with DER guidelines. On February 11, 1988, Stout met with Booher at Booher's place of business to explain the DER guidelines. Stout informed Booher that it was against the law to dispose of waste tires on his property. Also, during this visit, Booher asked Stout if he were allowed to build a fence with the tires. Stout informed Booher that first he needed to submit plans to DER for review and approval. Near the end of this visit, Booher grabbed Stout by the shirt and told him to get off his property.

Subsequently, DER mailed a notice of violation to Booher by certified mail. Booher did not accept the mail, and it was returned to DER. On March 17, 1988, Stout, accompanied by a state police officer, hand carried the notice of violation to Booher's place of business.

The notice of violation charged Booher with: (1) depositing or permitting the depositing of tires on his property without a DER permit in violation of Section 610(1) of the Solid Waste Management Act (SWMA);[1] (2) constructing a solid waste storage, processing or disposal facility on his property without a DER permit in violation of Section 610(2) of the SWMA;[2] and (3) threatening a DER inspector in the course of the performance of his duties in violation of Section 610(7) of the SWMA.[3] The notice of violation also directed Booher to cease and desist depositing the waste tires and to remove and properly dispose of the existing tires on his property by March 31, 1988.

Stout visited Booher's property on August 4, 1988. Stout noticed that Booher had not removed the tires, but, in fact,

---

1. Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. § 6018.610(1). Section 610(1) of the SWMA provides:
   It shall be unlawful for any person or municipality to:
   (1) Dump or deposit, or permit the dumping or depositing, of any solid waste onto the surface of the ground or underground or into the waters of the Commonwealth, by any means, unless a permit for the dumping of such solid wastes has been obtained from the department; provided, the Environmental Quality Board may by regulation exempt certain activities associated with normal farming operations as defined by this act from such permit requirements.

2. 35 P.S. § 6018.610(2). Section 610(2) of the SWMA provides:
   It shall be unlawful for any person or municipality to:
   (2) Construct, alter, operate or utilize a solid waste storage, treatment, processing or disposal facility without a permit from the department as required by this act or in violation of the rules or regulations adopted under this act, or orders of the department, or in violation of any term or condition of any permit issued by the department.

3. Section 610(7) of the SWMA, 35 P.S. § 6018.610(7), provides:
   It shall be unlawful for any person or municipality to:
   (7) Refuse, hinder, obstruct, delay, or threaten any agent or employee of the department in the course of performance of any duty under this act, including, but not limited to entry and inspection under any circumstances.

had brought in additional tires. The tires were stacked into a "wall" and laced together. During this visit, Stout again informed Booher that he could not dispose of waste tires on his property.

On January 10, 1989, DER issued an order directing Booher again to cease and desist from storing, processing or disposing of waste tires on his property and further directing that Booher remove and properly dispose of all waste tires within ninety days.

Booher did not submit a removal plan within the time period and continued to accept tires. On March 1, 1989, Edward Ligget, a DER Solid Waste Specialist, sent Booher a follow-up letter requesting that Booher comply with the order and submit a plan to DER. Booher received and read the letter, but he did not submit any plan in response.

On April 26, 1989, Richard Morgan (Morgan), a DER Compliance Specialist, sent a letter to Booher requesting information on Booher's plans for removal of the tires and questioning Booher as to why he did not respond to the January 10, 1989, order. Booher received and read Morgan's letter, but he did not submit a plan in response to it.

In July of 1989, Stout visited the site again and noticed that the tires had not been removed. In fact, Stout again noticed that additional tires were on the site since his last visit in August of 1988. On July 6, 1989, DER assessed Booher a civil penalty in the amount of $20,000. Of this amount, $12,000 was assessed for violating the January 10, 1989 order; $5,000 was assessed for threatening and assaulting a DER inspector; and $3,000 was assessed for the initial unpermitted activity. At the time of the civil penalty assessment, there were approximately 200,000 tires on Booher's property.

On June 21, 1989, DER petitioned this Court to enforce its January 10, 1989 order. On November 21, 1989, this Court issued an order directing Booher to comply immediately with DER's January 10, 1989, order by submitting a plan for removal of the waste tires within thirty days. Booher did not

submit a plan, and on May 1, 1990, this Court found Booher in contempt.

In the interim, Booher contacted DER's Regional Office in Williamsport and then DER's Bureau of Waste Management in Harrisburg about building a fence out of the waste tires. On October 11, 1989, Francis P. Fair, DER's Acting Regional Solid Waste Manager of the Harrisburg office advised Booher that such a fence was unacceptable and that he should remove the tires. Nevertheless, in October of 1989, Booher constructed a quarter-mile long "wall" or "fence" with tires, approximately five to ten feet high and ten to twenty-five feet thick.

Also in the interim, on July 18, 1989, Booher appealed to the EHB from DER's July 6, 1989, civil penalty assessment, alleging that the fence conformed to a plan submitted to DER for use of the tires and that the $20,000 penalty was excessive because the violations were not willful and no harm was occurring to the environment. A hearing was held on August 17, 1990, before EHB member Joseph N. Mack.

On June 20, 1991, the EHB issued a comprehensive decision upholding both the $3,000 penalty for the initial unpermitted disposal of waste and the $5,000 penalty for threatening a DER Inspector. However, the EHB noted that the DER's $12,000 penalty ($6,000 for a violation of the SWMA and $6,000 for a violation of DER regulations promulgated thereunder) was excessive insofar as it treated the underlying violation of DER regulations separately from the violation under the SWMA. Accordingly, the EHB reduced the penalty by $6,000 to a total amount of $14,000 for the three violations of the SWMA. Booher appeals.

On appeal, Booher presents three issues for our review. Booher contends that he did not unlawfully dispose of waste tires on his property; that he was not required to obtain a permit to build a fence out of the waste tires; and that the civil penalty was neither just nor reasonable, and constitutes an abuse of discretion by the EHB. Our scope of review of an EHB decision is limited to a determination of whether an error of law has been committed, whether constitutional rights

have been violated or whether any findings of fact are unsupported by substantial evidence. *Mathies Coal Company v. Department of Environmental Resources*, 522 Pa. 7, 13, 559 A.2d 506, 509 (1989).

■ Booher's first contention is that he is not guilty of operating an unlawful dumping and disposal facility in violation of Sections 610(1) and 610(2) of the SWMA, 35 P.S. §§ 6018.610(1) and 610(2), because the language in the SWMA and DER's regulations does not address waste tires. Booher also argues that pursuant to provisions of 25 Pa.Code 285.113 [4] he did not violate the prohibition against operating a disposal facility because the tires were not on his property for the required one year before DER's notice of violation was issued on March 16, 1989.

In *Starr v. Department of Environmental Resources*, 147 Pa.Commonwealth Ct. 196, 607 A.2d 321 (1992), we recently held that an accumulation of waste tires constitutes "municipal waste" [5] under Section 103 of the SWMA, 35 P.S. § 6018.103.

**4.** 25 Pa.Code § 285.113 provides:
(a) A person or municipality may not store municipal waste for more than 1 year unless:
(1) For waste that is recyclable or resalable, the Department has approved, in writing, a longer period, prior to the end of 1 year of storage based on a rate of recycling or resale of stored waste that is reasonably proportional to the rate of accumulation for storage.
(2) For other municipal waste, the Department has approved, in writing, a longer period to the end of 1 year of storage.
(b) The Department will presume that a person or municipality storing municipal waste contrary to the provisions of Subsection (a) is operating a municipal waste disposal facility and is subject to the applicable requirements of the act and regulations thereunder for municipal waste disposal.
(c) A person or municipality that stores municipal waste shall maintain accurate operational records that are sufficiently detailed to clearly and convincingly demonstrate to the Department that municipal waste is being stored under subsection (a). The records shall be made available to the Department upon request. The presumption in subsection (b) may be overcome by the operational records required by this subsection.
(d) Nothing in this section supersedes a regulation, permit condition or other requirement providing for a storage period of less than 1 year.

**5.** Section 103 of the SWMA, 35 P.S. § 6018.103, defines "municipal waste" as:

196 Pa.Commonwealth Ct. at 201, 607 A.2d at 323–324. In *Starr* we also held that an accumulation of waste tires constitutes "storage" and "disposal"[6] as defined by Section 103 of the SWMA. Slip Opinion at 5–7. In the present case, Booher did not seek approval from DER to operate either a waste storage or disposal facility. Nevertheless, Booher argues that since the tires were on his property for less than a year, he should not be charged under the SWMA with operating an unlawful storage and/or disposal facility. Booher relies on 25 Pa.Code § 285.113 which states in part, "Nothing in this section supersedes a regulation, permit condition or other requirement providing for a storage period of less than 1 year." 25 Pa.Code § 285.113(d). Booher never obtained authorization from DER to store waste tires on his property for any amount of time. Also, by the time the DER issued its January 10, 1989, order directing Booher to cease and desist from storing, processing or disposing of waste tires, and to remove and properly dispose of the existing tires, more than one year had passed since Booher began storing waste tires in October of 1987. Consequently, we conclude that the EHB did not err in concluding that Booher unlawfully deposited municipal waste in violation of Section 610(1) of the SWMA, 35

> Any garbage, refuse, industrial lunchroom or office waste and other material including solid, liquid, semisolid or contained gaseous material resulting from operation of residential, municipal, commercial or institutional establishments and from community activities and any sludge not meeting the definition or residual or hazardous waste hereunder from a municipal, commercial or institutional water supply treatment plant, waste water treatment plant, or air pollution control facility.

6. Section 103 of the SWMA, 35 P.S. § 6018.103, defines "storage" and "disposal" as follows:

> **"Storage."** The containment of any waste on a temporary basis in such a manner as not to constitute disposal of such waste. It shall be presumed that the containment of any waste in excess of one year constitutes disposal. This presumption can be overcome by clear and convincing evidence to the contrary.
>
> . . . .
>
> **"Disposal."** The incineration, deposition, injection, dumping, spilling, leaking, or placing of solid waste into or on the land or water in a manner that the solid waste or a constituent of the solid waste enters the environment, is emitted into the air or is discharged to the waters of the Commonwealth.

P.S. § 6018.610(1), and that Booher was operating an unlawful storage and disposal facility in violation of Section 610(2) of the SWMA, 35 P.S. § 6018.610(2).

Booher's second contention is that he did not need a DER permit to build a tire "fence" for the ostensible purpose of keeping deer from the neighboring state game lands off his property. Booher relies upon 25 Pa.Code § 271.101(b)(2), whereby a person or municipality is allowed to use municipal waste for a beneficial use if the person has received prior written approval from DER in accordance with 25 Pa.Code § 271.232(b). However, Booher never contacted DER with regard to constructing a fence with the tires until after he was fined $20,000 in July of 1989 when he contacted DER's Williamsport Regional Office, which was the incorrect district office. EHB's Decision, June 20, 1991, Findings of Fact (F.F.) No. 35–38, at 10; Reproduced Record (R.R.) at 13a. Booher was informed by the Williamsport office that he needed to contact the appropriate regional office to discuss submitting a plan for the fence. F.F. No. 39; R.R. at 13a. On September 5, 1989, Booher wrote to DER's Bureau of Waste Management in Harrisburg advising DER of his plan to build a fence with the tires. F.F. No. 40; R.R. at 13a.

On October 11, 1989, Francis P. Fair, DER's Acting Regional Solid Waste Manager determined that Booher's proposed fence was simply a reaction to the notice of violation and was unacceptable. F.F. No. 42; R.R. at 14a. Accordingly, the EHB did not err in concluding that Booher violated the SWMA by not obtaining a permit for the disposal of municipal waste and also by failing to obtain written approval for the beneficial use of municipal waste on his property.

Booher's third contention is that the $14,000 civil penalty is neither just nor reasonable and constitutes an abuse of discretion by the EHB. The $14,000 penalty was assessed in the following amounts: $3,000 for the initial disposal of waste tires, a violation of Section 610(1) of the SWMA, 35 P.S. § 6018.610(1); and $6,000 for operating an unlawful municipal waste storage and/or disposal facility, a continuing violation of Section 610(2) of the SWMA, 35 P.S. 6018.610(2); and $5,000

for threatening a DER inspector, a violation of Section 610(7) of the SWMA, 35 P.S. § 6018.610(7).

Pursuant to Section 605 of the SWMA, 35 P.S. § 6018.605, DER may assess a civil penalty for every violation of the SWMA, whether the violation was willful or negligent. Under DER guidelines a civil penalty assessment for negligent behavior falls within a range from $1,500 to $10,000. F.F. No. 29; R.R. at 11a. DER guidelines for reckless disregard of its regulations require an assessment in the range from $6,000 to $17,500. F.F. No. 32; R.R. at 12a.

DER considered that Booher's initial disposal of waste tires was the result of negligent behavior. F.F. No. 29; R.R. at 11a. Consequently, the $3,000 penalty assessed for this violation is within the lower range of possible penalties and does not constitute an abuse of discretion by the EHB. The $6,000 penalty for continuing to violate the SWMA's prohibition against unlawful storage and/or disposal of municipal waste is based on a finding of reckless behavior. F.F. No. 32; R.R. at 12a. This is supported by the record, which clearly reflects Booher's persistent refusal to comply with DER's January 10, 1989, order directing removal of the tires. The $6,000 is the least amount within the reckless range. Also, DER's $5,000 penalty for assaulting Inspector Stout was in the middle of the $1,500 to $10,000 range for negligent behavior. F.F. No. 30; R.R. at 12a. Given the nature of Booher's actions toward Stout during his February 11, 1988, visit (F.F. No. 13; R.R. at 9a), the civil penalty could have been much higher. *See* Concurring and Dissenting Opinion of EHB Member Richard S. Ehmann (R.R. at 30a–31a).[7] As a result, the $14,000 civil penalty is reasonable and not an abuse of discretion.

Accordingly, we affirm the order of the EHB.

7. EHB Member Ehmann would have assessed a $15,000 penalty against Booher for his assault on Inspector Stout. Administrative Law Judge Ehmann noted that in a society built on laws, Booher's conduct, which constituted assault and battery rather than mere obstinacy or verbal exchange, cannot be condoned and must be condemned. As a result, he considered the $5,000 penalty to be unreasonably small. R.R. at 30a–31a.

## ORDER

AND NOW, this 18th day of May, 1992, the order of the Environmental Hearing Board in the above-captioned proceeding is affirmed.