798 A.2d 192

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**David R. PACKER, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 16, 2001.

Decided May 31, 2002.

482

Ronald T. Williamson, Norristown, D. Michael Fisher, William H. Ryan, Robert A. Graci, Harrisburg, for Com.

Christian A. Fisanick, Ebensburg, for Pennsylvania District Attorneys Ass'n, amicus curiae.

Louise S. Thompson, Conshohocken, for Dept. of Environmental Protection, amicus curiae.

Hugh J. Bracken, Media, for David R. Packer.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

Justice NEWMAN.

The Commonwealth appeals an Order of the Commonwealth Court, which reversed the conviction of Appellee David R. Packer (Packer), pursuant to the Solid Waste Management Act (SWMA).[1] We granted review to consider the conclusion of the Commonwealth Court, which held that an employee may not be criminally charged with violating section 610(1) of the SWMA, 35 P.S. § 6018.610(1) (hereinafter section 610(1)). Section 610(1) addresses solid waste and provides, in relevant part, that:

§ **6018.610 Unlawful conduct**

It shall be unlawful for any person or municipality to:

(1) Dump or deposit, or permit the dumping or depositing, of any solid waste onto the surface of the ground or underground or into the waters of the Commonwealth, by any means, unless a permit for the dumping of such solid wastes has been obtained from the department . . . .

35 P.S. § 6018.610(1). For the following reasons, we reverse.

## FACTS AND PROCEDURAL HISTORY

Packer worked as a laborer, equipment operator, and truck driver for Glenn Holmes (Holmes) and the United States Environmental Service Corp.[2] Holmes owned property on Anderson Road (Anderson Road property) in East Coventry Township, Chester County. Prior owners had operated the Anderson Road property as an automobile junkyard before Holmes acquired it.

On October 15, 1993, George Strutynski (Strutynski), an excavator employed by East Coventry Township (Township), observed Packer operating a track hoe and burying tires in the northwest corner of the Anderson Road property. Stru-

---

1. Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. §§ 6018.101–6018.1003.

2. Holmes managed and operated the United States Environmental Service Corp. He and his wife were the sole shareholders of the company.

tynski reported this conduct to the police and the Township secretary. After this report was made, the Pennsylvania Office of Attorney General conducted a search at the northwest corner of the Anderson Road property and discovered that tires had been buried six to eight feet deep into the ground. The Department of Environmental Resources[3] never issued a permit authorizing the dumping or depositing of waste tires on the Anderson Road property. Consequently, the Commonwealth charged Packer and Holmes with violating section 610(1) of the SWMA, which prohibits dumping or depositing solid waste without a permit. .

At the criminal jury trial, Strutynski testified that he had observed a track hoe next to an excavated trench on the Anderson Road property. According to Strutynski's estimation, eighty to one hundred feet of the trench had been covered with dirt and a hole about twenty-five feet long and twenty feet deep remained. Strutynski stated that he had observed tires protruding from the sides of the excavated hole and he saw clean tires at the bottom of the hole. Strutynski further testified that he watched Packer cover the clean tires at the bottom of the hole with dirt. Finally, as an expert in excavation,[4] Strutynski offered his opinion that Packer was burying tires on the Anderson Road property.

The Commonwealth also offered the testimony of Holmes' brother, Craig Holmes (Craig), regarding an incident that took place in 1993, when he had assisted his brother in cleaning the Anderson Road property. Craig testified that he and his brother loaded tires from the Anderson Road property into trailers. According to Craig, at the end of one particular week, ten to fifteen trailers had been filled with tires and only one and a half trailers remained empty. Craig stated that a six to ten-foot pile of tires remained, waiting to be put into the

3. Effective July 1, 1995, section 501 of the Conservation and Natural Resources Act, Act of June 28, 1995, P.L. 89, 71 P.S. § 1340.501, renamed the Department of Environmental Resources the Department of Environmental Protection (DEP).

4. After voir dire on Strutynski's experience, the trial court permitted Strutynski to testify as an expert in excavation. (N.T. 11/23/98, pp. 42–47).

trailers. When Craig returned to the Anderson Road property after the weekend, he testified that he had observed that three quarters of the tires were missing, yet the one and a half trailers remained empty. Later, while operating a bulldozer on the Anderson Road property, Craig stated that he became submerged in mud and clay and had to dig six feet to extricate the bulldozer. Craig testified that when he asked his brother and Packer why his bulldozer sank, one of them had responded, "you mean you don't know that the tires were buried there." (N.T. 11/23/98, p. 102). Craig stated that Holmes or Packer had explained that they had used a track hoe to dig a twenty-foot hole, filled the hole with tires, and covered the hole with approximately five to eight feet of dirt. (N.T. 11/23/98, pp. 102–105).

Packer testified on his own behalf. He indicated that before 1993, Holmes hired him as a subcontractor on a per job basis and, in 1993, Packer became a full-time employee of Holmes. Packer testified that on the day that Strutynski observed him using the track hoe on the Anderson Road property; Packer was using the equipment to remove tires from their rims. Packer stated that while in the process of this project, he discovered that tires were buried underground and he informed Holmes of his discovery. According to Packer, Holmes told him to follow the tires. Packer explained that he was digging tires out of the ground when Strutynski confronted him and accused him of burying tires. In addition, Packer testified that while removing tires from the hole, he accidentally knocked some tires back into the hole with the track hoe.

At the conclusion of trial, the jury found Packer and Holmes guilty of violating section 610(1). The trial court sentenced Packer to one to twelve months of imprisonment, imposed a fine of $2,500.00, and ordered restitution to the Township in the amount of $2,300.00. The trial court sentenced Holmes to two to twelve months imprisonment, imposed a fine of $10,000.00, and ordered restitution of $2,300.00 to the Township. Packer and Holmes filed post-trial motions, which the trial court denied, and then Packer and Holmes appealed to the Commonwealth Court.

The Commonwealth Court affirmed the conviction of Holmes, but reversed the conviction of Packer. *See Commonwealth v. Packer*, 754 A.2d 44 (Pa.Cmwlth.2000). The court concluded that our legislature did not intend for section 610(1) to impose criminal liability on "mere employees." *Id.* at 48–49. In its analysis, the court reasoned that section 610(1) requires the Commonwealth to prove beyond a reasonable doubt that a person, who had a duty to obtain a permit, dumped or deposited solid waste without obtaining that permit. *Id.* The court held that Packer, as an employee, had no duty to obtain a permit, and therefore reversed his conviction under section 610(1). *Id.*

## DISCUSSION

The Commonwealth has previously prosecuted employees for violating provisions of our waste management statutes. *See generally Commonwealth v. Scarpone*, 535 Pa. 273, 634 A.2d 1109 (1993) (employee convicted of violating 35 P.S. §§ 6018.401, 6018.606(f) relating to management of hazardous waste); *Commonwealth v. One Mack Dump Truck*, 743 A.2d 542 (Pa.Cmwlth.1999) (employee convicted of violating 35 P.S. § 6018.302 relating to the disposal of residual waste and 35 P.S. § 6018.303 relating to the transportation of residual waste); *Wargo v. Commonwealth*, 71 Pa.Cmwlth. 329, 454 A.2d 692 (1983) (employee convicted for dumping solid waste without a permit pursuant to Pennsylvania SWMA, 35 P.S. § 6009(1), *repealed by*, 35 P.S. § 6018.1001). The issue of whether the Commonwealth can hold an employee criminally responsible for violating section 610(1), however, is one of first impression. Because our discussion involves questions of law, our review is plenary. *See Phillips v. A–Best Products Co.*, 542 Pa. 124, 665 A.2d 1167, 1170 (1995).

We begin our analysis by examining the language of section 610(1) because, where the intent of the legislature is clear from the plain meaning of the statute, courts need not pursue statutory interpretation. 1 Pa.C.S. § 1921(b); *LTV Steel Co., Inc. v. Workers' Compensation Appeal Bd. (Mozena)*, 562 Pa. 205, 754 A.2d 666, 674 (2000). Only when the

language of the statute is ambiguous does statutory construction become necessary. 1 Pa.C.S. § 1921(c); *Oberneder v. Link Computer Corp.*, 548 Pa. 201, 696 A.2d 148, 150 (1997). In addition, we note that penal statutes are to be strictly construed. 1 Pa.C.S. § 1928(b)(1); *Commonwealth v. Booth*, 564 Pa. 228, 766 A.2d 843, 846 (2001). "[S]trict construction does not require that the words of a penal statute be given their narrowest possible meaning or that legislative intent be disregarded." *Booth*, 766 A.2d at 846. "It does mean, however, that where ambiguity exists in the language of a penal statute, such language should be interpreted in the light most favorable to the accused." *Id.*

The SWMA regulates various kinds of waste management activities, including the disposal of several types of waste. 35 P.S. § 6018.102. Section 610(1) imposes criminal liability upon any person that dumps solid waste into the ground without a permit.[5] The SWMA defines "solid waste" as "[a]ny waste, including but not limited to, municipal, residual or hazardous wastes, including solid, liquid, semisolid or contained gaseous materials. The term does not include coal ash or drill cuttings." 35 P.S. § 6018.103. The regulations of the DEP provide that an accumulation of waste tires, as in the present case, is "residual waste,"[6] 25 Pa.Code §§ 271.2(c)(3), 287.2(c)(3), and consequently an accumulation of waste tires is solid waste under section 610(1). In addition, the parties do not dispute that the DEP had not issued a permit for such dumping. Therefore, whether Packer, as an employee, may be convicted under section 610(1) turns upon whether Packer is "any person." The SWMA defines "person" as:

[a]ny individual, partnership, corporation, association, institution, cooperative enterprise, municipal authority, Federal Government or agency, State institution and agency (includ-

---

5. *See* Op. at p. 194.

6. While the Commonwealth Court has held in the past that an accumulation of waste tires constitutes "municipal waste," *see Packer*, 754 A.2d at 48 n. 7; *Booher v. Department of Envtl. Resources*, 149 Pa.Cmwlth. 48, 612 A.2d 1098, 1102 (1992), the DEP has recently classified them as "residual waste." The difference in classification is not relevant to the present issue before this Court.

ing, but not limited to, the Department of General Services and the State Public School Buildings Authority), or any other legal entity whatsoever which is recognized by law as the subject of rights and duties. In any provisions of this act prescribing a fine, imprisonment or penalty, or any combination of the foregoing, the term "person" shall include the officers and directors of any corporation or other legal entity having officers and directors.

35 P.S. § 6018.103.

In construing the above language, the Commonwealth Court concluded that an employee could be convicted pursuant to section 610(1) only if that individual was the person responsible for obtaining a permit from the DEP. The court reasoned:

"Person" is defined as any "individual ... or any other legal entity ... recognized by law as the subject of rights and duties." Section 103 of the SWMA, 35 P.S. 6018.103. Thus, to convict a person for violating section 610(1), the Commonwealth must prove beyond a reasonable doubt that a person who had a duty to obtain a permit dumped or deposited solid waste without obtaining a permit.

*Packer*, 754 A.2d at 47.

 Contrary to the interpretation by the Commonwealth Court, the plain language of section 610(1) and the definition of "person" in the SWMA do not limit liability to only those responsible for obtaining a permit. Section 610(1) imposes criminal responsibility upon "any person" dumping or depositing solid waste when a permit for such conduct had not been obtained. Nowhere in the plain language of section 610(1) does the legislature limit the classification of "any person" to only those who had the duty to obtain a permit. In addition, the definition of "person" in the SWMA does not limit liability to those with a duty to obtain a permit. In examining the definition of "person" in section 103, it is clear that the "rights and duties" portion of the definition attaches to the "any other legal entity" segment that immediately precedes it. The Commonwealth Court concluded that the "rights and duties" language modified "any individual," and

therefore narrowed the reach of section 610(1) to only those persons with a duty to obtain a permit. The Commonwealth Court reached its result only by omitting ten separate entities that are divided by commas and listed between the "any individual" language and the "subject to rights and duties language." This interpretation is contrary to the well-established cannon of construction that courts should generally apply qualifying words or phrases to the words immediately preceding them. 1 Pa.C.S. § 1903; *Midboe v. State Farm Mut. Auto. Ins. Co.*, 495 Pa. 348, 433 A.2d 1342, 1347 (1981)(plurality); *John Hancock Property & Casualty Ins. Co. v. Commonwealth Ins. Dep't.*, 123 Pa.Cmwlth. 578, 554 A.2d 618, 621–22 (1989). Qualifying words "do not extend to or include other words, phrases, or clauses more remote, unless such extension or inclusion is clearly required by the intent or meaning of the context or disclosed by an examination of the entire act." *John Hancock Property & Casualty Ins. Co.*, 554 A.2d at 622. In the context of the definition of "person," it makes little sense to apply the "rights and duties" language to "individual" and the ten following entities, all of which by their very nature are already subject to rights and duties.

Following an examination of the entire SWMA, we conclude that the General Assembly did not intend to limit liability under section 610(1) to only those individuals who have the duty to obtain a permit for dumping solid waste. In other provisions of the SWMA, the General Assembly prohibited conduct of persons particularly charged with obtaining permits from the DEP. *See* 35 P.S. § 6018.201(a) ("no person or municipality shall own or operate a municipal waste processing or disposal facility **unless such person or municipality has first obtained a permit** for such facility from the department") (emphasis added); *see also* 35 P.S. § 6018.301 (relating to residual waste); 34 P.S. § 6018.401 (relating to hazardous waste). In contrast, the legislature stated in section 610(1) that it is unlawful for any person to "[d]ump or deposit . . . any solid waste . . . **unless a permit . . . has been obtained** . . . ." 35 P.S. § 6018.610(1) (emphasis added). Additionally, in the provisions of the SWMA regarding the grant-

ing, denying, renewing, modifying, revoking and suspending of permits and licenses, the General Assembly differentiates between persons, municipalities, partners, associates, officers, parent corporations, subsidiary corporations, contractors, subcontractors, and agents. 54 P.S. § 6018.503(d). Such distinction between classes is notably absent in section 610(1). Because the legislature did not use any qualifying language or carve out any exceptions when defining what constitutes criminal conduct in section 610(1), we decline to read such into the provision. *See* 1 Pa.C.S.1921(b); *Guinn v. Alburtis Fire Co.*, 531 Pa. 500, 614 A.2d 218, 220 n. 4 (1992) (stating that courts must ascertain and give effect to legislative intention as expressed in the language of a statute and cannot supply omissions under the powers of construction).

Imposing liability upon all individuals pursuant to section 610(1), and not simply those with the duty to obtain a permit, is consistent with the purposes of the SWMA. The General Assembly enacted the SWMA in part to "protect the public health, safety and welfare from the short and long term dangers of transportation, processing, treatment, storage, and disposal of all wastes" and "to implement Article I, Section 27 of the Pennsylvania Constitution." [7] 35 P.S. § 6018.102(4), (10); *Commonwealth, Dep't. of Envtl. Resources v. BVER Envtl., Inc.*, 130 Pa.Cmwlth. 344, 568 A.2d 298, 300 (1990). Holding all levels of employees responsible for complying with the SWMA protects against the dangers that stem from the improper disposal of wastes and preserves Pennsylvania's environment. The Commonwealth Court insulates from criminal prosecution an entire class of individuals who may commit illegal acts under section 610(1). We see no basis for engrafting this exemption onto the SWMA.

7. Article I, section 27 provides:
The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

In its Opinion, the Commonwealth Court expressed concern over the reach of section 610(1) as applied to employees. The Commonwealth Court stated:

We note that the General Assembly does not intend a result that is unreasonable or absurd. Section 1922 of the Statutory Construction Act, 1 Pa.C.S. § 1922. However, if we interpreted section 610(1) as applying to "mere employees," unreasonable and absurd results would occur. All employees in this Commonwealth would risk criminal sanction when handling solid waste if their employers failed to obtain necessary permits. Moreover, because the SWMA imposes absolute criminal liability, *see* Section 606(i) of the SWMA, 35 P.S. § 6018.606(i) and *Baumgardner Oil Co.*, it would be no defense to employees that their employers explicitly told them that the necessary permits had been obtained.

*Packer*, 754 A.2d at 48 n. 8.

Reading section 610(1) to apply to employees does not produce absurd results, but punishes all that are involved in the unpermitted dumping of solid waste. The SWMA imposes strict liability on offenders. 35 P.S. §§ 6018.610(1), 6018.103, 6018.606(i). *See generally Commonwealth v. Farmer*, 750 A.2d 925 (Pa.Cmwlth.2000); *Baumgardner Oil Co. v. Commonwealth*, 146 Pa.Cmwlth. 530, 606 A.2d 617, *pet. for allowance of appeal denied*, 531 Pa. 648, 612 A.2d 986 (1992). The General Assembly explicitly expressed its intent that "any person," i.e. "any individual," that violated section 610(1) would be subject to absolute liability for such an offense. 35 P.S. §§ 6018.610(1), 6018.103, 6018.606(i). The absolute liability provisions of the SWMA dictate that when an employee deliberately violates the law, which he is presumed to know, he cannot be excused because he intended no wrong. Our legislature has not expressly exempted employees from the class held responsible for violating section 610(1), and we decline to create such an exception. If the citizens of this Commonwealth are dissatisfied with the application of section 610(1) to employees, then their proper means of redress is not with this Court, but with the General Assembly.

 Finally, Packer asserts that section 610(1) is unconstitutional. Packer maintains that an omission may be a criminal offense only if the law imposes a duty to act on the person charged and cites to 18 Pa.C.S. § 301(b)(2) and *Commonwealth v. Pestinikas*, 421 Pa.Super. 371, 617 A.2d 1339 (1992). Parker argues that he cannot be punished for failing to obtain a permit when the SWMA does not impose the duty to obtain a permit upon him. Further, Packer argues that interpreting section 610(1) as imposing an affirmative duty upon an employee to obtain a permit or inquire as to the existence of a permit renders the provision vague and therefore violates the Due Process Clause.[8]

 There is a strong presumption in the law that legislative enactments do not violate the Constitution. *Commonwealth v. Swinehart*, 541 Pa. 500, 664 A.2d 957, 961 (1995); *Commonwealth v. Parker White Metal Co.*, 512 Pa. 74, 515 A.2d 1358, 1362 (1986).

> Moreover, there is a heavy burden of persuasion upon one who challenges the constitutionality of a statute. While penal statutes are to be strictly construed, the courts are not required to give the words of a criminal statute their narrowest meaning or disregard the evident legislative intent of the statute. A statute, therefore, will only be found unconstitutional if it "clearly, palpably and plainly" violates the constitution.

*Commonwealth v. Barud*, 545 Pa. 297, 681 A.2d 162, 165 (1996) (citations omitted).

 "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Commonwealth v. Heinbaugh*, 467 Pa. 1, 354 A.2d 244, 246 (1976) (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). *See also Commonwealth v. Cotto*, 562 Pa. 32, 753 A.2d 217, 220 (2000). A penal statute must give reasonable notice to a person of

8. U.S. CONST. amend. XIV, § 1.

what is proscribed. *Barud,* 681 A.2d at 165; *Commonwealth v. Boyle,* 533 Pa. 360, 625 A.2d 616, 620–21 (1993). "The fact that [the legislature] might without difficulty have chosen 'clear and more precise language' equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague." *Heinbaugh,* 354 A.2d at 246 (quoting *United States v. Powell,* 423 U.S. 87, 94, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975)). *See also Commonwealth v. Burt,* 490 Pa. 173, 415 A.2d 89, 92 (1980). In addition, "[i]t is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *Heinbaugh,* 354 A.2d at 245 (quoting *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975)). *See also Commonwealth v. Mastrangelo,* 489 Pa. 254, 414 A.2d 54, 56 (1980), *appeal dismissed,* 449 U.S. 894, 101 S.Ct. 259, 66 L.Ed.2d 124 (1980); *Waste Conversion, Inc. v. Commonwealth,* 130 Pa. Cmwlth. 443, 568 A.2d 738, 741 (1990), *pet. for allowance of appeal denied,* 525 Pa. 621, 577 A.2d 892 (1990), *cert. denied,* 498 U.S. 898, 111 S.Ct. 253, 112 L.Ed.2d 211 (1990).

Examining section 610(1) in light of the facts of the present case, we conclude that the provision comports with due process. The SWMA contains standards definite enough to inform a person of what he or she can and cannot do. *See Parker White Metal Co.,* 515 A.2d at 1368; *Baumgardner Oil Co.,* 606 A.2d at 623.[9] Packer, as an equipment operator and truck driver for an environmental corporation, could reasonably know that dumping tires without a permit is not permissible. Instead of cleaning up the Anderson Road property by

**9.** The Commonwealth Court has also stated that:

The United States Supreme Court, in *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1951[1952]), noted that legislation creating strict liability public welfare crimes, such as the SWMA, does not violate due process, because "legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element." *Id.* at 256, 72 S.Ct. at 246. Public welfare offenses proscribe the type of conduct that a reasonable person should know is subject to stringent public regulation and may seriously threaten the community's health or safety. The SWMA is a such a statute. [sic]

*Baumgardner Oil Co.,* 606 A.2d at 625 n. 10 (some citations omitted).

loading tires onto available empty trailers, Packer dug a trench and buried the tires. Packer was not punished for failing to obtain a permit, but the affirmative act of dumping solid waste when a permit had not been obtained. The plain language of section 610(1) holds all persons responsible for dumping solid waste without a permit and is not unconstitutional.

## CONCLUSION

Accordingly, we hold that section 610(1) of the SWMA imposes criminal liability on employees. In addition, we conclude that the section does not violate the Constitution of the United States. Therefore, the Order of the Commonwealth Court vacating the conviction of Packer is reversed.

Former Chief Justice FLAHERTY did not participate in the decision of this case.

Justice SAYLOR files a concurring and dissenting opinion.

Justice NIGRO concurs in the result.

Justice SAYLOR, concurring and dissenting.

I join in the majority's holding that Section 610(1) of the SWMA embodies an absolute liability offense that, by its terms, is intended to apply to all persons, including individual employees. *See* 35 P.S. §§ 6018.610(1), 6018.611. I am less comfortable, however, with the majority's assessment of the constitutional issues involved. In this regard, I would acknowledge the admonition of the United States Supreme Court that "offenses that require no *mens rea* generally are disfavored." *Staples v. United States,* 511 U.S. 600, 605–06, 114 S.Ct. 1793, 1797, 128 L.Ed.2d 608 (1994) (citation omitted). Further, I would not suggest that a violation of Section 610 constitutes a traditional public welfare offense, one type of crime as to which strict liability has been deemed acceptable, since such offenses are characterized by minimal penalties and impact upon reputation. *See Staples,* 511 U.S. at 616, 114 S.Ct. at 1802. By contrast, a first-time violation of Section 610

of the SWMA is a third-degree misdemeanor and carries potential penalties of up to one year in prison and a fine of at least $1,000 and up to $25,000 per day for each violation. *See* 35 P.S. § 6018.606(b).

Recently, in a concurring opinion in *Commonwealth v. Samuels*, 566 Pa. 109, 778 A.2d 638 (2001), I discussed considerations attendant to the designation of a crime as a strict or absolute liability offense consistent with the due process precepts. *See Samuels*, 566 Pa. at 113–50, 778 A.2d at 641–62 (Saylor, J., concurring). In attempting to evaluate such principles against the circumstances of the present case, however, a full review is hindered by the absence from the original record of the trial court's jury charge.[1] The trial court's instructions to the jurors are particularly important in the present context, since, for example, some courts have ameliorated constitutional concerns in relation to strict liability offenses in their jury charges by permitting jurors to consider various forms and degrees of affirmative defenses. *See, e.g., State v. Holte*, 631 N.W.2d 595, 598 (N.D.2001) ("We ... have permitted an affirmative defense to a strict liability offense as 'a logical accommodation which recognizes the reasons for both the legislative designation of the crimes as strict liability offenses and the constitutional interests of the accused.' ").[2] Given the magnitude of the questions involved, particularly in light of the increased prevalence of strict liability offenses in Pennsylvania's criminal law, *see generally Samuels*, 566 Pa. at

---

1. Transcripts from the proceedings are labeled "excerpt of proceeding," and were apparently prepared according to designations by the parties.

2. In this regard, it is significant that there is no factual assertion on the record presented that Appellant did not know that the act of burying tires was not authorized by a permit issued by the Department or was otherwise illegal. Rather, his testimony focused on the claim that he was removing previously buried tires from an excavation site. There was, therefore, no evidentiary predicate for consideration of a general affirmative defense instruction based upon complete lack of scienter.

Appellant's better argument is that the jury may have believed that he was removing tires, but nevertheless found him strictly liable under the statute based upon his concession that he inadvertently knocked several tires back into the site while working. However, due to the deficiencies in the record presented, I cannot determine whether the instructions given to the jury would have allowed for conviction on such grounds.

145–46, 778 A.2d at 661–62 (Saylor, J., concurring), I view it as critical for these questions to be decided based upon a full and complete appellate presentation.

Appellee was the appellant in the Commonwealth Court and therefore charged with the obligation of presenting an adequate record to the appellate courts,[3] *see* Pa.R.A.P.1911(a). As I find the record deficient, I would merely reverse the decision of the Commonwealth Court based upon the statutory analysis presented by the majority, while reserving decision on the constitutional questions concerning application of Section 610(1) of the SWMA in the absence of *mens rea* (and/or the availability of limited affirmative defenses) for a case in which an adequate record is presented.

---

**3.** In this regard, it should be noted that Appellee has not proceeded *in forma pauperis*.