**COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRON-MENTAL PROTECTION**

**v.**

**BLUE CHIP TRANSPORTATION CO., Borino Tire & Auto Center, Inc., Borino's OK Tire, Inc., Bristol Township, C & E Tires, Inc., Cee–Kay Automotive, Frey's Tire Shop, Inc., Goodyear Tire & Rubber Company, Grossman's**

Inc., Kelleher Tire Service, Inc., K-mart, LaBar Truck Rental, Llads Ventures, McCarthy Tire Service Centers, Moon's Tire Service, Larry Follweiler, Mustangs Stable, Roll'n Tire, Sandone Tire & Battery, Inc., Yost Tire & Auto Service and James V. Borino

v.

Trading Company of North America, Inc., John and Jane Does, Officers, Agents and Employees of Trading Company of North America, Inc., as yet unknown, Max Starr and Martha Starr.

Appeal of Larry Follweiler.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 12, 2012.

Decided Dec. 13, 2012.

Publication Ordered Feb. 25, 2013.

Anthony J. Martino, Bangor, for appellant.

Amy F. Ershler, Assistant Counsel, Williamsport, for appellee Pennsylvania Department of Environmental Protection.

BEFORE: PELLEGRINI, President Judge, and SIMPSON, Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

This matter is an appeal from a judgment of the Court of Common Pleas of the 26th Judicial District, Columbia County Branch (trial court) in favor of plaintiff Department of Environmental Protection (DEP) and against defendant Larry Follweiler (Follweiler) for recovery of abatement costs under the Solid Waste Management Act (SWMA).[1] Section 613 of the SWMA provides in relevant part that:

> Any person or municipality who causes a public nuisance shall be liable for the costs of abatement. The department [DEP], any Commonwealth agency, or any municipality which undertakes to abate a public nuisance may recover the costs of abatement in an action in equity brought before any court of competent jurisdiction.

35 P.S. § 6018.613. Following a nonjury trial, the trial court found Follweiler liable for his share of the costs of removing tires

---

1. Act of July 7, 1980, P.L. 380, *as amended,* 35　　P.S. §§ 6018.101–6018.1003.

from an illegal waste tire disposal site. We affirm.

This case arises out of the remediation of the largest illegal tire piles in Pennsylvania, a site that has previously been the subject of two appeals to this Court from orders of the Environmental Hearing Board (EHB) and enforcement and injunction proceedings in this Court's original jurisdiction.[2] Between 1981 and 1987, Max and Martha Starr and their corporation (collectively the Starrs) accumulated and stored at least four million waste tires on their property in Greenwood Township, Columbia County (the Starr Site). (Trial Court Verdict Findings of Fact (F.F.) ¶¶ 1, 3, Reproduced Record (R.R.) at 174a; Trial Transcript (N.T.) at 5–8, 36, 42–46, 58, R.R. at 103a–106a, 134a, 140a–144a, 156a; EHB May 5, 2003 Opinion, R.R. at 51a–56a.) The Starrs had no permit for storage, disposal or processing of the tires. (Trial Court Verdict F.F. ¶ 2, R.R. at 174a; N.T. at 6, 36, R.R. at 104a, 134a.)

Follweiler is and was in the business of picking up and disposing of scrap tires, operating under the name Larry's Tire Service. (N.T. at 64–65, R.R. at 162a–163a.) In the early 1980s, Follweiler made arrangements with Max Starr for the Starrs to take and dispose of these waste tires. (N.T. at 65, R.R. at 163a.) Follweiler sought out the Starrs to take his tires because "I was looking for a place to dispose of tires because there was really none available." (N.T. at 65, R.R. at 163a.) Between 1983 and 1985, Follweiler transferred 55 truckloads of his waste tires, 330 tons of tires, to the Starrs, who deposited them at the Starr Site. (Trial Court Verdict F.F. ¶ 5, R.R. at 175a; N.T. at 7–34, 36, 52–54, 65–69, R.R. at 105a–132a, 134a, 150a–152a, 163a–167a; DEP Trial Exhibits 1–74, 76, Supplemental (Supp.) R.R. at 18b–97b.) Follweiler made no attempt to determine whether the Starrs had a permit to accept the tires and paid no attention to how the Starrs were handling the tires. (N.T. at 67–69, R.R. at 165a–167a.)

Between 1987 and 2004, DEP made repeated attempts to have the Starrs remove the millions of tires at the Starr Site for proper disposal or processing through a series of legal proceedings. These included administrative orders, a consent adjudication, a consent order and agreement, and proceedings before both the Environmental Hearing Board and this Court. (EHB May 5, 2003 Opinion, R.R. at 50a–67a; *Starr v. Department of Environmental Resources*, 147 Pa.Cmwlth. 196, 607 A.2d 321 (1992); *Starr v. Department of Environmental Protection*, No. 1217 C.D.2003; *Department of Environmental Protection v. Starr*, No. 432 M.D.2003; *Department of Environmental Protection v. Starr*, No. 438 M.D.2003.) The Starrs, however, continued to fail to properly remove the tires. (EHB May 5, 2003 Opinion, R.R. at 55a–56a.) In April 2004, DEP and the Starrs entered into a settlement under which the Starrs paid DEP a $400,000 civil penalty, gave DEP and the Commonwealth rights to further reimbursement from any sale of the Starr Site or other funds received by the Starrs in the future, and granted access to the Starr Site for DEP and the generators, the persons who had transferred tires to the Starrs, to process and remove the tires. (April 23, 2004 Stipulation and Order, R.R. at 73a–84a.)

In January 2005, DEP commenced the instant equity action against twenty-one generators, including Follweiler, seeking

---

2. *See Starr v. Department of Environmental Resources*, 147 Pa.Cmwlth. 196, 607 A.2d 321 (1992); *Starr v. Department of Environmental Protection*, No. 1217 C.D.2003; *Department of Environmental Protection v. Starr*, No. 432 M.D.2003; *Department of Environmental Protection v. Starr*, No. 438 M.D.2003.

an order requiring them to each remove the amount of tires that they had transferred to the Starrs or had delivered to the Starr Site. (DEP Complaint, R.R. at 26a–47a, 87a.) In 2006, DEP filed a complaint against an additional generator and the two actions were consolidated by the trial court. (Trial Court Docket at 14, R.R. at 14a.) Most of the generators entered into settlements with DEP under which they either removed their quantity of tires from the Starr Site or made a payment for the cost of removal of tires based on the quantity of tires they had brought or sent to the Starr Site. (DEP Amended Complaint ¶¶ 3–4, R.R. at 92a; Follweiler Answer to Amended Complaint ¶¶ 3–4; N.T. at 48, 59, 62, R.R. at 146a, 157a, 160a.) Follweiler did not enter into any settlement with DEP or remove any tires from the Starr Site. (DEP Amended Complaint ¶¶ 8–9, R.R. at 93a; Follweiler Answer to Amended Complaint ¶¶ 8–9; N.T. 61, 67, R.R. at 159a, 165a.)

Between 2005 and 2009, while the action was pending, DEP paid contractors to remove the tires that were not removed by settling generators and completed the removal of all tires from the Starr Site. (N.T. at 42, 47–50, R.R. at 140a, 145a–148a; DEP Amended Complaint ¶¶ 10–11, R.R. at 93a–94a.) The costs that DEP incurred for the removal of the tires ranged from $69.75 per ton to $149 per ton and totaled over $2 million. (N.T. at 49–51, R.R. at 147a–149a; DEP Trial Exhibit 82, Supp. R.R. at 98b.) In August 2009, DEP filed an amended complaint asserting a claim under Section 613 of the SWMA, 35 P.S. § 6018.613, for abatement costs against Follweiler and the four other generators who had not entered into settlements, seeking an order that they pay the cost of removal of their share of the tires. (DEP Amended Complaint, R.R. at 91a–97a.) In 2010, the claims against the four other defendants were resolved by default judgments, settlement or discontinuance. (Trial Court Docket at 23, R.R. at 23a; Motion to Approve LaBar Truck Rental Stipulation Ex. A; Motion for Discontinuance as to Borino.)

On November 14, 2011, the trial court held a nonjury trial on DEP's abatement cost claim against the lone remaining defendant, Follweiler. At trial, Follweiler did not dispute that he transferred 330 tons of waste tires to the Starrs, but contended that the Starrs told him that they were going to process the tires into paving material. (N.T. at 64–67, 69, R.R. at 162a–165a, 167a.) He admitted that he never visited the Starrs' business and made no inquiry as to whether they had a permit for this processing. (N.T. at 67–69, R.R. at 165a–167a.) Follweiler did not submit any evidence disputing the cost of removing his tires from the Starr Site. Following the conclusion of the trial, the trial court on November 14, 2011, rendered a verdict in favor of the DEP and against Follweiler in the amount of $23,017.50, the cost of removing Follweiler's 330 tons of tires at $69.75 per ton. (Trial Court Verdict, R.R. at 174a–175a.)

Follweiler timely filed a motion for post-trial relief. On January 9, 2012, the trial court denied this motion and by separate order directed that the action be marked discontinued as to all other defendants. (Trial Court Order of January 9, 2012 Denying Post Verdict Motion; Trial Court Docket at 24a.) On February 6, 2012, Follweiler timely appealed from the trial court's denial of his motion for judgment notwithstanding the verdict. (Trial Court Docket at 24a; Notice of Appeal.)

Our review on this appeal is limited to determining whether the trial court's findings are supported by competent evidence and whether an error of law was committed. *Southwest Regional Tax Bureau v.*

*Kania,* 49 A.3d 529, 532 n. 5 (Pa.Cmwlth. 2012); *M & D Properties, Inc. v. Borough of Port Vue,* 893 A.2d 858, 861 n. 4 (Pa. Cmwlth.2006). Follweiler does not dispute that the evidence at trial showed that he transferred 330 tons of waste tires to the Starrs, that the Starrs did not have a permit and that the Starrs improperly disposed of the waste tires they received from him. (Appellant's Br. at 6–9, 12.) Rather, Follweiler argues only that he allegedly did not cause a public nuisance because his only conduct consisted of transferring the tires to the Starrs for transportation and there was no evidence that he knew that the Starrs were improperly disposing of the tires he transferred to them. Because the evidence established that Follweiler violated the SWMA and the SWMA imposes strict liability for violations of its provisions, we reject Follweiler's contentions.

Under Section 601 of the SWMA, a violation of any provision of the SWMA constitutes a public nuisance and any person who commits a violation of the SWMA is liable for the costs of abatement of any pollution or public nuisance caused by that violation. 35 P.S. § 6018.601.[3] The evidence at trial was sufficient to prove that Follweiler violated at least two provisions of the SWMA, Sections 610(8) and 610(6). Section 610 of the SWMA provides that:

> It shall be unlawful for any person or municipality *to:*
>
> *   *   *
>
> (6) Transport or *permit the transportation of any solid waste to any storage, treatment, processing or disposal facili-*

ty or area unless such facility or area possesses a permit issued by the department to accept such wastes, or contrary to the rules or regulations adopted under this act, or orders of the department, or in such a manner as to adversely affect or endanger the public health, safety and welfare or environment through which such transportation occurs.

> *   *   *
>
> (8) Consign, assign, sell, *entrust, give or in any way transfer residual* or hazardous *waste which is at any time subsequently, by* any such person or *any other person;*
>
> (i) *dumped or deposited or discharged in any manner into the surface of the earth* or underground or into the waters of the Commonwealth *unless a permit for the dumping or depositing or discharging of such residual* or hazardous *waste has first been obtained from the department;* or
>
> (ii) stored, treated, processed, disposed of or discharged by a residual or hazardous waste facility unless such facility is operated under a permit first obtained from the department.

35 P.S. § 6018.610 (emphasis added).

Under DEP's regulations, Follweiler's waste tires were residual waste. 25 Pa. Code §§ 271.2(c)(3), 287.2(c)(3). Indeed, Follweiler does not contest that his tires were residual waste. Because the evidence showed that Follweiler transferred waste tires to the Starrs and those tires were deposited by the Starrs at the Starr

---

**3.** Section 601 provides:

Any violation of any provision of this act, any rule or regulation of the department, any order of the department, or any term or condition of any permit, shall constitute a public nuisance. Any person or municipality committing such a violation shall be liable for the costs of abatement of any pollu-

tion and any public nuisance caused by such violation. The Environmental Hearing Board and any court of competent jurisdiction is hereby given jurisdiction over actions to recover the costs of such abatement.

35 P.S. § 6018.601.

Site without a permit (N.T. at 6–34, 36, 65–69, R.R. at 104a–132a, 134a, 163a–167a), Follweiler's transfer of those tires to the Starrs constituted an entrusting and transferring of residual waste that was subsequently dumped or deposited without a permit in violation of Section 610(8) of the SWMA.

The evidence also established that Follweiler violated Section 610(6) of the SWMA by permitting his solid waste, the tires, to be transported to a facility or area, the Starr Site, that did not have a permit. The trial testimony showed that Follweiler paid the Starrs to transport his waste tires to their facility and that the Starrs and their facility had no permit to accept the tires. (N.T. at 6–34, 36, 65–69, R.R. at 104a–132a, 134a, 163a–167a.) Follweiler's contention that he believed that the tires were to be ground up for paving material (N.T. 65–67, R.R. at 163a–165a) does not make his transfer of the tires legal. Section 610(6) applies to transportation of waste to both disposal and processing facilities. 35 P.S. § 6018.610.

Because Follweiler violated Section 610 of the SWMA, his conduct as a matter of law constituted a public nuisance and was sufficient to support liability for abatement costs. 35 P.S. §§ 6018.601, 6018.613. The abatement for which he was ordered to pay was the cost of the removal of waste tires from to the unpermitted Starr Site. Follweiler did not merely transfer tires for transportation; he transferred the waste tires to an unpermitted facility. Providing waste to a facility that is not permitted to handle such waste contributes directly, substantially and foreseeably to the cost of removing that waste from the illegal facility. As the trial court correctly concluded, "delivery of waste tires to an entity not approved for disposal of waste tires was a cause of this nuisance." (Trial Court Opinion at 3.)

The fact that Follweiler did not dump the tires himself and may not have known how his tires were disposed of by the Starrs is not a defense to DEP's abatement claim. Section 610 of the SWMA imposes strict liability for violations. *Commonwealth v. Packer*, 568 Pa. 481, 493, 798 A.2d 192, 199 (2002); *Commonwealth v. Sanico, Inc.*, 830 A.2d 621, 625–28 (Pa.Cmwlth.2003); *Waste Conversion, Inc. v. Commonwealth*, 130 Pa.Cmwlth. 443, 568 A.2d 738, 740–43 (1990) (*en banc*). Accordingly, DEP was not required to show either intent to cause harm or any control over the Starrs' harmful conduct to prove Follweiler's violations and abatement liability. *Packer*, 568 Pa. at 493, 798 A.2d at 199 (lack of intent to cause harm is not a defense to criminal prosecution for violation of SWMA); *Sanico*, 830 A.2d at 628 (trial court properly concluded that company violated SWMA where evidence showed that it caused the transportation of waste in a vehicle that did not comply with DEP regulations even though "there was a 'bonafide effort of the company personnel' ... to comply with the regulation"); *Waste Conversion*, 568 A.2d at 740–43 (company that loaded residual waste in independent contractor's truck was guilty of violation of Section 610(8) where independent contractor dumped some of the waste by the roadside in transporting it).

For the foregoing reasons, we affirm the trial court's judgment in favor of DEP and against Follweiler.

### ORDER

AND NOW, this 13th day of December, 2012, the judgment of the Court of Common Pleas of the 26th Judicial District (Columbia County Branch) in the above captioned matter is AFFIRMED.